UNITED ENGINEERING & CONTRACTING CO. v. BROADNAX.

(Circuit Court of Appeals, Second Circuit. March 10, 1905.)

No. 118.

1. CONTRACTS—CONSTRUCTION.

Where a proposal to furnish granite for the construction of a bridge contained a provision that the granite was to be Crotch Island granite, from the quarries of G. & S. and J. L. G.—it being the intention of the writer to use both quarries in obtaining the stone—such statement amounted to a mere intention to use both quarries, and not an agreement to do so, so that, on the offer being accepted, plaintiff's inability to obtain granite from the J. L. G. quarry did not constitute a breach of the contract; there being evidence that the other quarry could have been so worked as to have furnished all the stone required within the time prescribed.

2. SAME—MEASURE OF DAMAGES.

In an action for breach of a contract to purchase dimension granite of plaintiff for the construction of a bridge, to be the product of one or both of two named quarries, the measure of damages is the difference between the contract price and the cost of performance of the contract.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, § 1106.]

3. SAME—FEDERAL COURTS—MOTION FOR NEW TRIAL—REVIEW.

A decision on a motion for a new trial is not the subject of review in a federal appellate court.

4. SAME—OBJECTIONS TO EVIDENCE—SCOPE.

Where, in an action for breach of a contract to purchase dimension granite, defendant objected to a question asked for the purpose of determining the cost per cubic yard of producing the rough dimension granite blocks in connection with the contract, on the ground that it was not the correct way to establish the measure of damages, such objection was insufficient to present the question that the issue was not the cost of production to plaintiff, but the fair and reasonable cost.

5. SAME—CONDITIONS—PAROL EVIDENCE.

Where a written acceptance of an offer to furnish dimension granite for bridge construction stated that it should become effective only when the contract was made between the acceptor and a steel company approved by a bridge commission, such condition will be presumed to be exclusive, and parol evidence is therefore inadmissible to prove other conditions precedent.

6. SAME—MOTION TO DISMISS—OBJECTIONS—SCOPE.

Where, in an action for breach of a contract to purchase dimension granite, defendant moved to dismiss the complaint on the ground that there was no evidence to establish damages under the rule of law applicable to the facts in the case, such objection was insufficient to raise the question that there was no sufficient proof on which prospective profits could be estimated, for the reason that the value of the stone in the ledge was not proved.

7. SAME—CONSTRUCTION OF WORDS—PAROL EVIDENCE.

Where a proposal to furnish dimension granite for bridge construction recited that the granite should be in accordance with specifications and acceptable to the engineer, the phrase "acceptable to the engineer" was not ambiguous, and parol evidence was therefore inadmissible to explain the same.

8. SAME—EVIDENCE.
In an action for breach of a contract, the exclusion of a question put to defendant's. president, asking him whether a phrase in the contract was inserted by reason of any suggestion made by him, was proper.

9. SAME—CONSTRUCTION OF CONTRACT.
Where plaintiff's proposal to furnish all the dimension granite required in the construction of certain bridge approaches, to be in accordance with specifications and acceptable to the engineer, was accepted, subject to the approval of the commission, as per official contract form and specifications, he was entitled to furnish as much dimension granite as it would take to make the construction walls as specified in the contract approved· by the bridge commission, and not only so much as defendant might choose to call for.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of the Circuit Court, Southern District of New York, entered upon the verdict of a jury, in favor of defendant in error, who was plaintiff below. The action was to recover damages for breach of contract. The verdict was for $19,422.19, but upon motion for new trial the plaintiff consented to its reduction in the amount of $7,679.70. The facts sufficiently appear in the opinion.

For opinion below, see 128 Fed. 649.

L. Laflin Kellogg, for plaintiff in error.
H. H. Bowman, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The contract is in writing. On February 12, 1901, plaintiff wrote to defendant as follows:

"I propose to furnish you all the dimension granite required in the construction of the new East River Bridge approaches, the granite to be in accordance with the specifications and acceptable to the engineer for thirty-three (33) cents per cubic foot f. o. b. New York Harbor, subject to the following conditions:
"You are to furnish free wharfage.
"You are to discharge the vessel, etc.
"You are to pay the freight, etc.
"It is understood that this granite is to be Crotch Island granite from the quarries of Goss & Small and John L. Goss. It is the intention of the writer to use both quarries in obtaining this stone."

To this on the same day defendant replied—the answer being written on the same piece of paper—as follows:

"Accepted subject to the execution of contract between this company and the Penna. Steel Company and the approval of the Commission as per official contract form and specifications."

Subsequently the contract between defendant and the Pennsylvania Steel Company was executed and approved by the bridge commission. It is not disputed that defendant got its stone for the approaches elsewhere, and refused to receive any from the plaintiff under the contract sued upon. The alleged errors which have been treated in argument may be considered in the order in which they are presented in the brief.

1. Defendant contends that the court should have directed a verdict in its favor on the ground that the proof showed that John L. Goss refused to allow plaintiff to make any deliveries from his quarry. It is argued that plaintiff was obliged to furnish stone from the quarry of John L. Goss as well as from the quarry of Goss & Small, that he was unable to do so, that his inability to do so constituted a breach of the contract, and that defendant was therefore justified in treating the contract as null and void. The evidence introduced by both sides indicates that both quarries were mentioned solely in order to provide that in case one quarry should prove insufficient, or be put out of commission through some accident, there might be another source of supply (acceptable to the bridge commission engineer) from which the plaintiff could furnish the stone in time to meet the requirements of the work of construction. The mere statement of an intention to use both quarries is not an agreement to do so. There was evidence warranting the finding that the Goss & Small quarry could have been so worked as to have furnished all the stone required within the prescribed time. There was nothing to show that there was any special wish to obtain John L. Goss granite. Moreover, if the words used are to be construed with the greatest strictness, they contain no requirement as to the relative proportions which may be drawn from each quarry. The terms of the contract would be complied with if all the stone except 10 cubic yards were drawn from either quarry, and only 10 cubic yards from the other. We think the trial judge was right in construing "and" to mean "or" (Davis v. Boardman, 12 Mass. 80; Brown v. Furniture Co., 58 Fed. 286, 7 C. C. A. 225, 22 L. R. A. 817), and in holding that it was the true meaning of the contract that the "whole quantity had got to come from those quarries, one or the other or both."

2. It is contended that the verdict should be set aside because it was based wholly on testimony as to the difference between the contract price and the cost of performance, whereas, the true measure of damages was the difference between the contract price and the market value. It is suggested in the brief that the alleged error under this point is raised by the exception to the denial of the motion to set aside the verdict. But a decision upon a motion for a new trial is not the subject of review in a federal appellate court. Laber v. Cooper, 7 Wall. 565, 19 L. Ed. 151; Railway Co. v. Heck, 102 U. S. 120, 26 L. Ed. 58. However, the point is fairly presented by an exception "to so much of the charge as is to the effect that the difference between the cost of production and the contract price is the measure of damages." The article to be furnished under this contract was so-called dimension granite; that is, as defendant's witness testified, stone cut as nearly as possible to sizes from which it would be proper to extract a dressed piece of stone, such as a pillar, column, pedestal, or anything else that would be necessarily accurate in dimensions. Fixed dimensions are given prior to the quarrying of the stone, and it is got out according to those dimensions. Moreover, the stone was to

be the product of one or both of two named quarries. The case is within the rule laid down in Masterson v. The Mayor, 7 Hill, 61, 42 Am. Dec. 38. We have so recently discussed the question, what is the measure of damages in cases of this kind? that a reference to the opinion in Allen v. Field (C. C. A.) 130 Fed. 641, is sufficient on this branch of the case.

Under this point the defendant alleges error because the evidence was confined to showing what would have been the actual cost of performance to plaintiff's assignors, suggesting that there is no evidence to show that the cost to them was the fair and reasonable cost. No request to charge, no exception to the charge, called the attention of the court to any such proposition. A great deal of evidence was taken as to what it would have cost to have got dimension granite of the sizes which were required for the approaches out of this quarry, and the only exception to any of it is the one covered by the fourteenth assignment of error. This question was put to a qualified witness: "What would the cost per cubic yard have been, in connection with this contract of producing the rough dimension granite blocks?" To which defendant objected "on the ground that it is not the correct way to establish the measure of damages," and called the attention of the court to certain authorities. The court overruled the objection, saying, "I think the cases you mention do not preclude this mode of giving damages," and exception was reserved. No doubt, this sufficiently presented the proposition that a comparison of contract price with "market value," and not with "cost price," was, according to defendant's theory, the true measure of damages; but it failed to challenge the attention of the court to the point now raised, viz., that the question did not contain the words "fair and reasonable."

3. It is contended that the court erred in excluding evidence offered for the purpose of showing that the acceptance of plaintiff's offer was to be effective only in case the labor law was not declared unconstitutional, and in case the source of supply was approved by, and acceptable to, the engineer of the bridge commission. Reliance is had on authorities which hold that parol evidence is sometimes admissible to show that the execution or delivery of a written instrument was conditional, and not to take effect until some subsequent event should take place. In those cases, however, the written instrument itself did not undertake to set forth the conditions precedent to its validity. Here, on the contrary, it expressly states that it shall become effective only when a contract between the defendant and the Pennsylvania Steel Company should be executed, and the approval of the bridge commission obtained. Having thus enumerated conditions precedent to validity, it will, under familiar principles, be presumed that the written enumeration is exhaustive (Seitz v. Brewers' Refrigerating Company, 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837), and parol testimony to add to it was properly excluded.

The other points argued may be briefly disposed of:

It is contended that there was no sufficient proof upon which prospective profits could be estimated, "for the reason that the

value of the stone in the ledge * * * was never proved." This point was not reserved by any exception. Defendant seeks to raise it under denial of motion to dismiss the complaint; but the ground therein stated, "that there has been no evidence offered to establish damages under the rule of law applicable to the facts in the case," called the attention of the court only to the proposition already discussed, viz., that defendant insisted that contract price should be compared, not with cost, but with market value.

There is certainly nothing ambiguous in the phrase "acceptable to the engineer," and the trial court properly excluded questions as to what it meant. Nor was there error in excluding a question put to defendant's president, asking him whether a phrase in the contract was inserted "by reason of any suggestion made by him."

The judge correctly charged that under the contract the plaintiff was entitled to furnish as much as it would take of dimension granite to make the construction walls as specified under the contract approved by the bridge commission, and not only so much dimension granite as the defendant might have chosen to call for. The inclusion in the damages of certain "backing" which was required in construction according to specifications, but which was not technically "dimension granite," was corrected by the reduction of the verdict upon decision of motion for new trial.

The judgment is affirmed.