In the Matter of the Arbitration between URAGA DOCK COMPANY, LTD., Respondent, and MEDITERRANEAN & ORIENTAL STEAMSHIP CORP., Appellant.

First Department, November 5, 1958.

*Joseph M. Callahan* of counsel (*Joseph A. Doran, James E. Freehill* and *Morton Liftin* with him on the brief; *Hill, Betts & Nash,* attorneys), for appellant.

*Wharton Poor* of counsel (*R. Glenn Bauer* with him on the brief; *Haight, Gardner, Poor & Havens,* attorneys), for respondent.

RABIN, J. This is an appeal from an order granting petitioner's (the builder's) motion for a stay of arbitration. Respondent (the buyer) was the prospective purchaser of two 21,000 ton tankers, for an aggregate sum of approximately $8,000,000, to be constructed by the builder in Japan. The proceeding arises out of a dispute as to whether the buyer made timely tender of payment of the first payment due pursuant to the terms of the written construction contract. Since the agreement provided for arbitration of " [a]ny dispute arising under or by virtue of this Contract ", the buyer sought arbi-

tration of the described issue. The builder moved to stay arbitration on the ground that the failure to make a timely first payment was a failure to perform an express condition precedent of the contract thereby vitiating *ab initio* the contract, including the arbitration clause.

A review of the pertinent provisions of the contract leads us to the conclusion that the arbitration clause was operative and therefore the proceedings should not have been stayed.

The contract provides that the builder " agrees " to deposit with a designated bank a signed copy of the construction contract, a certified copy of an export license, and a security agreement to be executed by a named Japanese bank. Within 10 days after the depositary bank notifies the buyer that the foregoing documents have been duly deposited, the buyer " shall " pay a sum representing 20% " of the Contract Price * * * and the initial payment under this Contract." The contract thereafter provides: " Upon the initial payment by the Buyer as provided hereinabove, this Contract shall become effective and binding upon the parties. If, however, the Buyer fails to make the initial payment under the terms and conditions above, this Contract shall be null and void and no obligations, duties or liabilities shall attach to either the Builder or the Buyer under this Contract."

At a later point the contract obliges the buyer to pay interest at the rate of 6% per annum in the event of " default of payment as to any instalment ", with an option to the builder to rescind the contract if " any instalment remains unpaid by the Buyer for twenty (20) days after such instalment is due and payable ".

The final article of the contract specifies that the contract " shall become effective only on fulfillment and realization of all of " certain conditions, i.e.: (1) execution of the contract; (2) delivery to the depositary bank of the above-described documents; and (3) payment by the buyer to the builder " of the first instalment as provided in this Contract." The first two of the conditions were duly completed. Initial payment, however, was not made within 10 days of the completion of those first two conditions, but was tendered within the period which, according to buyer's interpretation, constituted a grace period. The builder refused to accept the payment. The buyer initiated arbitration proceedings and the builder promptly applied for a stay.

The court below found that the grace period did not apply to the initial payment and concluded therefrom that the agreement, including the arbitration clause, " never took effect ". We consider it unnecessary to decide, and specifically refrain

from deciding whether the grace period did so apply to the first payment. For in our view the arbitration clause was effective and it remains for the appropriate arbitration tribunal to determine in the first instance the effect of the grace provisions upon the time for the first payment.

No doubt the right to arbitrate clause "presuppose[s] the existence of a valid and enforceable contract". (*Matter of Kramer & Uchitelle,* 288 N. Y. 467, 471.) But here the integrity of the contract is challenged not on grounds extrinsic to the terms of the contract such as fraud or illegality, but because of failure to perform one of its terms. The parties have agreed to leave to arbitration "[a]ny dispute arising under or by virtue of this Contract", and that, we believe, necessarily includes a dispute as to whether the buyer has duly performed pursuant to the contract the prescribed condition of initial payment.

The signed agreement imposed mutual obligations on the parties and these were absolute ones, for the builder "agrees" to obtain and deposit with a Japanese bank, specified documents and within 10 days after notice thereof the buyer "shall" make the initial payment. The parties having thus assumed these obligations there immediately came into being a binding contract and the arbitration clause became immediately operative.

While it is true that the continued existence of the contract was conditioned upon the buyer making the initial payment, the failure to make such payment could not have the effect of removing the arbitration clause from the agreement. It is of no consequence that the continued existence of the contract depends on whether the tender of the first payment was timely. We have already held arbitrable an issue concerning the continued existence of a prior agreement allegedly superseded by a later one. (*Matter of Spectrum Fabrics Corp.* [*Main St. Fashions*], 285 App. Div. 710, affd. 309 N. Y. 709.)

The builder invokes and relies upon one portion of the contract to demonstrate the contract's nullification, but so long as the construction and application of any of its terms is in issue, even the term prescribing the annulment of the contract, that issue has by agreement of the parties been delegated to arbitration. The builder may not at once accept and repudiate that term of the contract mandating arbitration. (Cf. *Yeomans* v. *Bell,* 151 N. Y. 230; *Friedman* v. *Richman,* 213 App. Div. 467, affd. 241 N. Y. 576.)

Moreover the only consequence of the failure to make the first payment was to make ineffective all subsequent obligations. It did not relieve the builder of its obligation to deposit the

documents nor the buyer of its obligation to make the first payment. These obligations were absolute.

As observed the failure to make the initial payment in time does not support the conclusion that the contract never went into effect. Even prior to that payment the builder had "agreed" and assumed an enforcible contractual obligation to undertake to procure an export license and a security agreement to be lodged with a designated depository. (*Silverman* v. *Goldmann Realty Corp.*, 232 App. Div. 292; *Creamer* v. *Metropolitan Securities Co.*, 120 App. Div. 422.) And upon performance of these conditions by the builder it is clear that the buyer had the duty to make the initial payment. Consequently, while the builder's promise to build was conditioned upon timely initial payment, the initial vitality of the agreement, together with the arbitration clause, was not vitiated by the alleged failure to make timely payment. We hold therefore that the arbitration proceedings were properly instituted and should not have been stayed.

The order should be reversed on the law, with $20 costs and disbursements to appellant, and motion to stay arbitration denied.

Stevens, J. (dissenting). The contract between the parties provided that the builder was to deposit a signed copy of the contract, a certified copy of the export license for the vessel and an agreement executed by the Dai-Ichi Bank, Limited, Tokyo, with the First National City Bank, Tokyo, "Prior to the accrual of the initial payment due from the Buyer to the Builder".

"Within ten days after the receipt of telegraphic advice from the First National City Bank, Tokyo", that the builder had deposited the above documents "the *Buyer* shall pay by telegraphic transfer to the First National City Bank, Tokyo", the sum of $768,000 in United States money.

"Upon the initial payment by the Buyer as provided hereinabove, this Contract shall become effective and binding upon the parties. If, however, the Buyer fails to make the initial payment under the terms and conditions above, this Contract shall be null and void and no obligations, duties or liabilities shall attach to either the Builder or the Buyer under this Contract."

The contract provided further in the same article (art. V) that all payments other than the initial payment were to be paid to the Dai-Ichi Bank, Ltd., Tokyo, but reaffirmed "The initial payment shall be paid" as stated above.

Article VI provided for interest charges on default payments of any instalment, and specified the manner in which notice of default for any instalment "other than the first instalment" should be given.

Article XXIII, the final article of the contract, entitled "Effective Date" read as follows:

"The effective date of this Contract shall be as provided in this Article:

"This Contract shall become effective only on fulfillment and realization of all of the following conditions:

"1) Signing of the Contract, Plan and Specifications by the Buyer and the Builder.

"2) Delivery by the Builder to the First National City Bank, Tokyo of a signed copy of this Contract and a copy of the Export License from the Japanese Government and the Security Agreement referred to in Article V.

"3) Payment by the Buyer to the Builder of the first instalment as provided in this Contract."

It is not disputed that the initial payment by the buyer was not made within 10 days as called for by the provisions of article V. After notice of cancellation the respondent-appellant moved for arbitration, which was stayed by Special Term on motion of the petitioner-respondent.

I find myself unable to agree with the majority that arbitration was within the contemplation of the parties under the circumstances shown to exist here. Nor can I agree that the contract became binding and effective immediately and the arbitration clause operative.

To so hold, in my opinion, is to rewrite the contract for the parties and to give a strained and tortuous construction to the plain language of the contract. Parties may prescribe conditions precedent to the assumption of obligations and assume the risks attendant thereon and are afforded the protections provided thereby. Here this is especially true since they are dealing at arm's length.

It seems clear from the language of the agreement and the facts not in dispute that the obligations or potential obligations were terminated by the act or failure to act of the parties and the contract never became effective. This arbitration which presupposes the existence of a valid contract, should not be granted. (*Matter of Kramer & Uchitelle,* 288 N. Y. 467.) Neither courts nor arbitrators have the power to make a new contract for the parties. (*Matter of Kallus* [*Ideal Novelty & Toy Co.*], 292 N. Y. 459.)

This case may be distinguished from *Matter of Spectrum Fabrics Corp.* (*Main St. Fashions*) (285 App. Div. 710, affd. 309 N. Y. 709) for in that case there were two writings and performance was substantially completed by delivery and acceptance of the goods. " * * * the mere assertion by a party of a meaning of a provision which is clearly contrary to the plain meaning of the words cannot make an arbitrable issue. * * * If the meaning of the provision of the contract sought to be arbitrated is beyond dispute, there cannot be anything to arbitrate and the contract cannot be said to provide for arbitration." (*Matter of International Assn. of Machinists* [*Cutler-Hammer*], 271 App. Div. 917, 918, affd. 297 N. Y. 519.)

I therefore dissent and vote to affirm.

VALENTE, J. (dissenting). I join in Justice STEVENS' dissent but would add that the decision of Special Term to stay the arbitration can be sustained as well on another ground. Special Term found that the agreements were unambiguous in requiring the initial payment to be made within 10 days after the receipt of certain specified telegraphic advices; and held further that the provisions of article VI, allowing a period of grace, related solely to the subsequent installments. Appellant argues that while it agrees the contracts are unambiguous, it disagrees with the conclusion at Special Term that article VI does not encompass the initial payment.

In *Matter of Sarle* (*Sperry Gyroscope Co.*) (4 A D 2d 638, affd. 4 N Y 2d 917) this court (per BREITEL, J.) said (pp. 641–642): "It has been held definitely by the Court of Appeals that a bona fide dispute is not raised with regard to the interpretation of such an agreement if the tendered issue involves the meaning of a provision which is ' beyond dispute '. Such an issue raises a question of law to be determined preliminarily by the court, even though the alleged dispute may fall within the literal language of the arbitration agreement. (*Matter of General Elec. Co.* [*Elec., etc., Workers*], 300 N. Y. 262; *Matter of International Assn. of Machinists* [*Cutler-Hammer*], 271 App. Div. 917, affd. 297 N. Y. 519; see, also, *Alpert* v. *Admiration Knitwear Co.*, 304 N. Y. 1; *Matter of Wenger & Co.* v. *Propper Silk Hosiery Mills,* 239 N. Y. 199.) "

In my opinion, the meaning of the agreements herein is "beyond dispute " and it does not make for ambiguity simply because a party contends for a different interpretation of the language. The language clearly means what it says and says what it means. The contract is to be void unless the initial payment is made within a given time. There is no grace period

permitted as to the initial payment. It is hard to conceive how the parties could have drawn the agreements with any greater clarity to accomplish their unquestionable intention. Since there is no ambiguity, the issue tendered for arbitration is not bona fide and Special Term properly granted a stay of arbitration.

BREITEL, J. P., and M. M. FRANK, J., concur with RABIN, J.; VALENTE, J., dissents in opinion, in which STEVENS, J., concurs; STEVENS, J., dissents in opinion, in which VALENTE, J., concurs.

Order reversed, on the law, with $20 costs and disbursements to appellant, and motion to stay arbitration denied, with $10 costs.