**EL HOSS ENGINEERING & TRANSPORT CO., Ltd., Petitioner-Appellee,**

v.

**AMERICAN INDEPENDENT OIL COMPANY, Respondent-Appellant.**

**No. 114, Docket 26384.**

United States Court of Appeals
Second Circuit.

Argued Dec. 7, 1960.

Decided April 10, 1961.

Clark, Circuit Judge, dissented.

Taylor, Scoll & Simon, New York City (David E. Scoll, Kenneth Simon, New York City, of counsel), for petitioner-appellee.

Lundgren, Lincoln & McDaniel, New York City, for respondent-appellant.

Before CLARK, WATERMAN and FRIENDLY, Circuit Judges.

WATERMAN, Circuit Judge.

El Hoss Engineering & Transport Co., Ltd. (El Hoss) petitioned the United States District Court for the Southern District of New York, pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, for an order directing American Independent Oil Company (Aminoil) to submit certain disputes to arbitration as allegedly provided for in an agreement made by the two parties. Judge Bryan issued an order compelling Aminoil to submit to arbitration (183 F.Supp. 394) (1960) and Aminoil appeals.

El Hoss is a Lebanese corporation with its principal place of business in Beirut, Lebanon. Aminoil is a Delaware corporation with its principal place of business in New York City. The alleged agreement which we must construe involves commerce and the amount in controversy far exceeds $10,000. Therefore, the court below had jurisdiction to entertain the petition. Bernhardt v. Polygraphic Co. of America, 1956, 350 U.S. 198, 76 S.Ct. 273, 100 L. Ed. 199.

Robert Lawrence Co. v. Devonshire Fabrics, Inc., 2 Cir., 1959, 271 F.2d 402, certiorari granted 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, dismissed pursuant to Rule 60, 1960, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37, holds that the validity and interpretation of an arbitration agreement must be determined by the federal substantive law of arbitration as expressed in the Arbitration Act.[1]

---

1. "We, therefore, hold that the Arbitration Act in making agreements to arbitrate 'valid, irrevocable, and enforceable' created national substantive law clearly constitutional under the maritime and commerce powers of the Congress and that the rights thus created are to be adjudicated by the federal courts whenever such courts have subject matter jurisdiction, including diversity cases, just as

Accord, Petition of Kinoshita & Co. (American Oceanic Corp.), 2 Cir., 1961, 287 F.2d 951; Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 2 Cir., 274 F.2d 805, certiorari denied 1960, 363 U.S. 843, 80 S. Ct. 1612, 4 L.Ed.2d 1727. Contra, Lummus Co. v. Commonwealth Oil Refining Co., 1 Cir., 280 F.2d 915, certiorari denied 1960, 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed.2d 225. The question for decision here is: Did the parties make a binding contract to arbitrate disagreements as to whether certain conditions to which the contract was made "subject" were complied with?

In 1959 Aminoil distributed a 54 page instrument upon which prospective bidders could tender bids for the purchase of Aminoil's automotive and construction equipment, and for the job of providing the transportation service Aminoil would require. It proposed to sell transportation equipment valued at nearly one million dollars and further proposed to lease this equipment from the successful bidder at a substantial rental. Aminoil, by affixing its signature below that of the successful bidder in a space provided for this purpose on page 54 of the instrument, could accept that bid. However, below this signature line there was a clause conditioning Aminoil's acceptance upon the bidder's compliance with the conditions of the agreement by providing guarantees covering purchase price, performance bonds and insurance protection:

"subject to compliance with the conditions of this agreement as to guarantees or endorsements by third parties in favor of the company covering the unpaid installments on pur-

chase price, performance bonds and insurance coverage, etc., not later than fourteen (14) days from the date of the acceptance by the company."*

This conditional acceptance expressly applied to "this agreement consisting of sections one through thirteen inclusive and attachments one through seven inclusive totaling fifty-four pages"—i. e., it applied to the entire instrument. Included as part of the instrument was clause eleven of section one, the clause that provided for arbitration:

"11. In the event of any disagreement between the parties hereto as to the effectuation of this agreement, or performance thereof, or any part of the agreement, each party undertakes to use its best efforts to resolve said disagreement without submission to arbitration. However, should such solution be impossible, the parties hereto will select a mutually acceptable arbitrator whose decision as to the matters presented to him shall be final. If the parties cannot agree on such an arbitrator, each shall nominate an arbitrator of its choice and these shall in turn select a third, and the decision of a majority of this panel of three shall be final as to all matters submitted. This paragraph shall not affect the rights of the company to terminate this agreement under the provisions of paragraphs three (3) and four (4) of section one (1)."

The lower court, relying on Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra, declared that this clause

the federal courts adjudicate controversies affecting other substantive rights when subject matter jurisdiction over the litigation exists. We hold that the body of law thus created is substantive not procedural in character and that it encompasses questions of interpretation and construction as well as questions of validity, revocability and enforceability of arbitration agreements affecting interstate commerce or maritime affairs, since

these two types of legal questions are inextricably intertwined." Robert Lawrence Company v. Devonshire Fabrics, Inc., 2 Cir., 271 F.2d 402, at page 409.

The lower court determined that the law of the forum was applicable. 183 F. Supp. 394, at pages 399–400. Under the circumstances outlined therein that decision was proper.

* The entire original instrument was in upper case throughout.

was separable from the rest of the instrument and was a binding contract to arbitrate differences which had arisen as to whether El Hoss, the successful bidder, had performed the acts required of El Hoss before Aminoil was bound.

We are of the opinion that this conclusion that the arbitration clause was separate from the rest of the contract was erroneous. Robert Lawrence was a giant step in the development of a federal substantive law of arbitration and in the implementation of the federal policy that encourages the private resolution of commercial disputes. Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., 2 Cir., 1942, 126 F.2d 978, 985. The aim of Robert Lawrence was to destroy frustration of the Arbitration Act by a litigant's cry of fraud in the inducement, a claim that would require a preliminary court adjudication in every case where the cry was raised. See 271 F.2d at page 410. Therefore, we concluded that it was consistent for parties to agree to arbitrate among the issues arising under their contract the issue of whether fraud existed in the inducement. Under the circumstances present in the Robert Lawrence situation, a contract for the sale of goods, the parties were found to have so agreed. There was no allegation of fraud in the inducement of the arbitration clause of the agreement but that cry was raised only as to the subject matter of the contract, the sale of the goods, and therefore we found that the arbitration agreement was separable from the rest of the agreement.

This is not the situation before us in the present case. Aminoil made it clear that the enjoyment by a bidder for the contract of the contractual fruits and duties was conditioned on the bidder's prior performance of the prior acts required of that successful bidder. See United Engineering & Contracting Co. v. Broadnax, 2 Cir., 136 F. 351, certiorari denied 1905, 197 U.S. 624, 25 S.Ct. 800, 49 L.Ed. 911; F. W. Berk & Co. v. Derecktor, 1950, 301 N.Y. 110, 92 N.E.2d 914. Every clause including the arbitration clause was expressly so conditioned. This poses quite a different problem from the problem posed by a cry of fraud in the inducement. Here there is no likelihood of sham litigation to avoid submitting issues to arbitration. A complete reading of the contract discloses that Aminoil sought to protect itself from being bound by the agreement until the bidder met the conditions incumbent upon it initially to meet. There is no reason in fact or in law for a frustration of this clearly demonstrated intent. Aminoil was proposing to sell a million dollars worth of transportation equipment and was further proposing to lease from its purchaser the equipment it had sold to the purchaser and was agreeing to pay a substantial rental therefor. Considering the size of the transaction it is patently understandable that Aminoil would choose to condition its obligations under the contract, including its obligation to arbitrate, upon the prior performance by the bidder of basic financial guarantees.

We concern ourselves here, as the courts concerned themselves in Robert Lawrence and Kinoshita, with ascertaining the intent of the parties from an examination of the entire instrument they bound themselves by and from the meaning of the language they used in their agreement—the traditional approach of common law judges when questions involving the validity or interpretation of contracts are presented for judicial resolution. The agreements in the three cases differ from each other. In Robert Lawrence there was no language obstacle to considering the arbitration clause a separable clause and to reading it so that it would encompass a dispute as to whether entry into that contract was induced by fraud. In Kinoshita & Co. the words of the arbitration clause were readable so as not to encompass an agreement to arbitrate an issue of fraud in the inducement. In the present case the document before us is an integrated document where every clause, including the clause pro-

viding for arbitration, that binds both parties is carefully conditioned on the prior performance of the specified conditions by one of these parties. We find this fact to be a clear and unambiguous obstacle to a separability of the arbitration clause from the remainder of the agreement, and we read the entire contract as demonstrating a clear intent on the part of both parties not to arbitrate any dispute with reference to whether there was a full performance of these threshold conditions.

Although the U.S. Arbitration Act looks favorably upon arbitration it does not dictate that we should disregard parties' contractual agreements that contain specific language outlining the boundaries of the areas intended to be arbitrable areas.

"The question is one of intention, to be ascertained by the same tests that are applied to contracts generally. Courts are not at liberty to shirk the process of construction under the empire of a belief that arbitration is beneficent, any more than they may shirk it if their belief happens to be the contrary. No one is under a duty to resort to these conventional tribunals, however helpful their processes, except to the extent that he has signified his willingness." Marchant v. Mead-Morrison Mfg. Co., 1929, 252 N.Y. 284, 299, 169 N.E. 386, 391 (Cardozo, C.J.).

We reverse the decision of the court below.

Although we are not required to apply state law it will not be amiss for us to consider it. After the argument before us in Robert Lawrence the N. Y. Court of Appeals decided Petition of Uraga Dock Co., 1959, 6 N.Y.2d 773, 186 N.Y. S.2d 669, 159 N.E.2d 212 in which that court was faced with a situation where the contract that contained the arbitration clause specified that the contract "shall become effective only on fulfillment and realization" of certain conditions. Among these conditions was one that the builder, on the one hand, "agrees" to deposit a security agreement drawn on a specified bank, and one that the buyer, on the other hand, "shall" make a specified down payment. In construing the contract the Appellate Division of the Supreme Court of New York had held by a divided court, 3–2, that the buyer was obligated to perform the conditions when the agreement was signed and that, as there were mutually binding obligations on the part of both parties, the contract, including the arbitration clause, became immediately operative, 1st Dep't 1958, 6 A.D.2d 443, 179 N.Y.S.2d 474. In a memorandum decision, the N. Y. Court of Appeals, a single judge dissenting, affirmed the Appellate Division without comment. In Uraga there were certain acts to be performed by both parties to the bargain. The Appellate Division interpreted the agreement to have obligated both parties to the performance of these acts. There is no indication in the agreement we are construing that El Hoss, though the successful bidder, was bound to Aminoil by any commitment on its part to perform the conditions. Petition of Uraga Dock Co., supra, has never been followed by the N. Y. Court of Appeals or, from our search, by any of New York's lower courts; and Board of Education etc., v. Heckler Elec. Co., 1960, 7 N.Y.2d 476, 199 N.Y.S.2d 649, 166 N.E.2d 666, followed in Board of Education etc. v. Bernard Associates No. 3, Inc., 2d Dep't 1960, 11 A.D.2d 1038, 206 N.Y.S.2d 140, casts some doubt on its long range effect. In Heckler Elec. Co. the N. Y. Court of Appeals decided that a failure to comply with the notice provision of New York Education Law, § 3813 precluded arbitration, declaring that the applicability of § 3813 was a preliminary matter for the court for it involved "a condition precedent to Heckler's very right to arbitration and the arbitrator's very jurisdiction." 7 N.Y.2d 476, at page 481, 199 N.Y.S.2d 649, at page 652, 166 N.E.2d 666, at page 668. The majority did not expressly disapprove of Uraga Dock Co., although the dissenting opin-

ion of Judge Froessel, 7 N.Y.2d 484, 199 N.Y.S.2d 654, 166 N.E.2d 670, relied upon it. We see no distinction that would justify reaching different results between conditions precedent to arbitration whether statutory, as in that case, or contractual, as here.

We have decided that the parties did not agree to arbitrate any disagreements as to performance by El Hoss of the threshold acts it was required to perform. We hold that adjudication of those disagreements is the responsibility of the court; and our next inquiry is directed to discovering whether El Hoss did in fact perform the acts which, if performed, would give it the right to obtain a court order directing arbitration of all disputes arising from disagreements "as to the effectuation of * * or performance * * * of the agreement."

No findings on this issue were made below, for the theory of the lower court decision rendered them unnecessary. Therefore, no opportunity has been accorded the parties for a trial with reference thereto. The present record consists only of the sworn affidavits of the officers and the attorneys of the respective parties, with the correspondence of the parties annexed as exhibits. Aminoil's affidavits state that the conditions were never performed. El Hoss's affidavits state that it substantially complied with the conditions, and that Aminoil's actions made it impossible fully to comply. Therefore, there would appear to be issues of fact as to whether the conditions were performed, waived or excused. These issues should not be determined on affidavits, but rather a full trial should be had. See Alvado v. General Motors Corp., 2 Cir., 229 F.2d 408, 411–412, certiorari denied 1956, 351 U.S. 983, 76 S. Ct. 1050, 100 L.Ed. 1497. We remand this cause for a full trial of the issue as to whether El Hoss performed the necessary conditions required of it in order that the contract might become effective and El Hoss could therefore compel Aminoil to proceed to an arbitration.

Reversed and remanded for further proceedings not inconsistent with this opinion.

CLARK, Circuit Judge (dissenting).

The majority decision in my view is an undesirable departure from the liberal arbitration policy enunciated by this court in Robert Lawrence Co. v. Devonshire Fabrics, Inc., 2 Cir., 271 F.2d 402, certiorari granted 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, dismissed 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37, and by the New York courts in Petition of Uraga Dock Co., 6 A.D.2d 443, 179 N.Y. S.2d 474, affirmed 6 N.Y.2d 773, 186 N.Y.S.2d 669, 159 N.E.2d 212. The question before us is not whether arbitration is good or bad or whether a lawyer is wise in initially advising his client to sign an agreement containing a comprehensive arbitration clause. The question is whether parties, by the device of an agreement which they have accepted to arbitrate future disputes, may obtain a speedy and efficient substitute for litigation in our crowded courts. As this court recognized in Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra, Congress clearly intended that such a substitute should be available.

Under Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, a party to an arbitration agreement can obtain specific performance through an expedited motion practice, provided there is no substantial issue as to whether the other party entered into an agreement to arbitrate the dispute in question. "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. My brothers and I differ as to how far the court, in determining the question of the "making of the agreement for arbitration," should consider the consequences of defective performance of the contract it-

self upon the effectiveness of the arbitration provision. When conditions are specifically attached to the arbitration provision, such as the giving of certain notice or the prior use of grievance machinery, there is no doubt that the court must determine whether these conditions precedent have been complied with before directing the parties to proceed to arbitration. The problem which has caused difficulty is whether the court must also evaluate compliance with those contract provisions which constitute conditions precedent to the contract generally, but which are not expressly made conditions precedent to arbitration. If the court intrudes into such matters of performance, it greatly multiplies the expense and delay attendant upon arbitration. Furthermore, in determining the adequacy of performance, the court is ruling on the merits of the controversy in a field which the parties have thought is better left to businessmen, or experts, or some other class of persons than judges and juries. And since the distinction between conditions precedent and conditions subsequent is seldom clearly drawn, a party resisting arbitration is sorely tempted to invoke court proceedings to determine whether certain terms of the contract are not in fact conditions precedent and whether a full trial is required of the complicated issue of performance.

Therefore, in order to minimize the likelihood of expensive court proceedings to determine arbitrability, courts should refrain from deciding questions of performance of substantive terms of the contract except where expressly required to do so by the parties. Those terms of the contract which have the function of conditions precedent should be deemed conditions precedent only to the obligation to perform the substantive terms of the contract unless they are expressly made conditions precedent to the duty to arbitrate. Thus in all cases involving the adequacy of performance we would not look to a dimly expressed "intent" of the parties to determine whether the arbitration clause is "separable" from the rest of the contract, but would rather make separability a strong principle of construction, to be overcome only by express language.

For the reasons above stated, I believe that Petition of Uraga Dock Co., supra, represents a sound view and should have been followed. I cannot agree with the suggestion that it is distinguishable, for it seems to me on all fours with our case here. Nor can I perceive that the New York courts have in some slight way retreated from the position there taken. The departure from the New York position thus creates a gap between federal and state law in the direction where I must regard the immediate federal trend as erroneous. I therefore agree with Judge Bryan's reasoned and persuasive opinion below, D.C.S.D.N.Y., 183 F.Supp. 394, and dissent.