**NUCLEAR INSTALLATION SERVICES COMPANY**

v.

**NUCLEAR SERVICES CORPORATION.**

Civ. A. No. 78–4230.

United States District Court,
E. D. Pennsylvania.

April 11, 1979.

Bruce W. Ficken, Philadelphia, Pa., for petitioner.

John E. Flaherty, Jr., Philadelphia, Pa., for respondent.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court is the petition of Nuclear Installation Services Company ("NISCO"), pursuant to the Federal Arbitration Act ("the Arbitration Act"), 9 U.S.C. § 1, *et seq.*, to compel the respondent Nuclear Services Corporation ("NSC") to proceed, if at all, in arbitration with any claims that it may wish to assert against NISCO arising out of the construction of the Susquehanna Steam Electric Station at Berwick, Pennsylvania, and to enjoin NSC from proceeding with legal action in any forum that is inconsistent with the order to arbitrate. Upon consideration of the petition and response, the various supplemental memoranda, as well as the argument of counsel at a hearing on the matter, the Court finds: (1) that it has jurisdiction over the subject matter of the petition; (2) that the subcontract between NISCO and NSC is in writing and evidences a transaction in interstate commerce; (3) that NSC's claims against NISCO are within a mandatory arbitration agreement; (4) that there is no dispute as to the making of the agreement to arbitrate; and, (5) that there is no dispute as to NSC's breach of such agreement. Accordingly, the petition to compel arbitration of NSC's claims against NISCO will be granted. However, because litigation instituted by NSC in the Superior Court of California has been stayed by that court [1]

---

1. In an order dated February 15, 1979, the Court of Appeals of the State of California in and for the First Appellate District, Division Three, stayed proceedings in that court pending the disposition of this petition.

pending disposition of this petition, and because there is no allegation that NSC will institute any further proceedings, the petition to enjoin NSC from proceeding in any other forum will be denied on the present record, without prejudice to any future motion by NISCO. *See Network Cinema Corp. v. Glassburn*, 357 F.Supp. 169, 172 (S.D.N.Y.1973); *Necchi Sewing Machine Sales Corp. v. Carl*, 260 F.Supp. 665, 669 (S.D.N.Y.1966); 28 U.S.C. § 2283.

The factual context of the instant dispute is as follows: NISCO, a corporation organized under the laws of the State of Delaware having its principal place of business in Westmont, New Jersey, entered into a contract with the Bechtel Power Corporation pursuant to which NISCO was to perform certain design, engineering and installation services in connection with the construction of a nuclear power plant at Berwick, Pennsylvania. On or about July 22, 1976, NISCO awarded certain engineering work on the project to NSC, a corporation organized under the laws of the State of California and having its principal place of business in California, with the negotiation of a formal contract to be undertaken at a later date. NSC began work on the project and on or about December 10, 1976, under circumstances in dispute, a comprehensive and facially valid agreement ("the subcontract") was executed between NISCO and NSC. In addition to containing numerous provisions pertaining to specifications and other technical matters, the subcontract contained a mandatory arbitration section covering "any controversy . . . with respect to any matter or thing involved in this Subcontract or construction project." Subcontract § 46.

In June or July of 1977, while work was in progress pursuant to the subcontract, a dispute arose as to the quality of the work being performed by NSC and NISCO's resulting refusal to pay for the allegedly faulty work. On or about December 16, 1977, NSC filed suit in the Superior Court of California, County of Santa Clara, demanding money damages in the amount of the reasonable value of the engineering services performed by NSC on the Berwick project and naming NISCO as a defendant. After unsuccessfully attacking the personal jurisdiction of the California court and failing in an attempt to assert its arbitration rights under the California Rules of Civil Procedure, NISCO filed an answer and a counterclaim.

On or about December 18, 1978, NISCO filed the instant petition to compel NSC to arbitrate its claims against NISCO, alleging diversity of citizenship and an amount in controversy in excess of $10,000, exclusive of costs and interest. NISCO contends that there is no dispute as to the making of the agreement to arbitrate or as to NSC's breach of that agreement and that, therefore, this Court should order the parties to proceed to arbitration of NSC's claims against NISCO. In response, NSC argues: (1) that its claims against NISCO are not within the coverage of the arbitration section relied upon by NISCO; (2) that NISCO waived its arbitration rights by its participation in the California litigation, or, is guilty of laches because it waited so long before asserting its federal arbitration rights; and, (3) that there is a dispute as to the making of the agreement to arbitrate because of allegations by NSC that there was not a valid "acceptance" of its "offer," vitiating the formation of the subcontract as a whole. On the basis of these allegations, NSC argues that the Court should proceed to trial on the issue of the formation of the contract.

The Arbitration Act provides that:
[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an exist-

ing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2. A party seeking to compel arbitration or aggrieved by a refusal to arbitrate "may petition any United States district court, which save for such [arbitration] agreement, would have jurisdiction under Title 28." *Id.*, at § 4. The Arbitration Act further provides that, upon the filing of such a petition:

> [t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

*Id.* If the Court finds that there is a dispute as to the making of the agreement to arbitrate or as to a breach of that agreement, it must proceed to trial on the disputed issue. *Id.*

### I. *Jurisdiction*

■ Under the terms of the Arbitration Act, this Court has jurisdiction over the subject matter of petitions to compel arbitration, if it would otherwise be vested with jurisdiction under Title 28. *John Ashe Assoc., Inc. v. Envirogenics Co.*, 425 F.Supp. 238, 240 (E.D.Pa.1977). The Court finds that NISCO is a Delaware corporation having its principal place of business in New Jersey and that NSC is a California corporation having its principal place of business in California. We also find that the amount in controversy is in excess of $10,000. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332. *See Burger Chef Systems, Inc. v. Baldwin, Inc.*, 365 F.Supp. 1229, 1232 (S.D.N.Y.1973).

The Court finds that the written subcontract evidences a transaction in interstate commerce. 9 U.S.C. §§ 1, 2. An examination of the record and affidavits submitted by the parties conclusively shows that the contract was negotiated between a New Jersey office and a California office for the performance of services in California, New Jersey and Pennsylvania as part of a large, integrated construction project in Pennsylvania. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Stateside Machinery Co. v. Alperin*, 591 F.2d 234, 239 n.9 (3d Cir. 1979).

### II. *Arbitrability*

NISCO seeks to rely upon § 46 of the subcontract which states:

> If at any time any controversy should arise between the Company and the Subcontractor with respect to any matter or thing involved in this Subcontract or construction project, which controversy is not controlled or determined by Section 6 above or other provisions of the Subcontract, then the decision of the Company shall be followed by the Subcontractor, and said controversy shall be decided as follows: (1) The Subcontractor shall conclusively be bound by and abide by the Company's decision, unless the Subcontractor shall commence arbitration proceedings as hereinafter provided within thirty (30) days following such decision; (2) If the Subcontractor decides to appeal from the decision of the Company, then the controverys [*sic*] shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) [*sic*] may be entered in any Court having jurisdiction thereof, and the arbitration decision shall be final and binding on both parties. Said arbitration proceedings shall be filed in the Philadelphia Regional Office of the American Arbitration Association; (3) No dispute shall interfere with the progress of the general construction, and Subcontractor shall proceed with its work; (4) If arbitration is conducted by Owner and the Company concerning any dispute between the Company and Subcontractor,

then Subcontractor agrees to a joint arbitration with Owner. Contractor and Subcontractor, as well as with any other parties thereto before one arbitration board which shall determine all of said disputes.

(Emphasis added.) While NSC does not contend that its claims against NISCO do not arise out of the Berwick construction project, it does argue that these claims are not covered by § 46 for other reasons. First, NSC argues that only "appeals" from the "decisions" of NISCO are subject to mandatory arbitration. Second, NSC contends that the claims are within § 6 of the contract which deals with arbitration proceedings and awards involving the owner of the project. Third, NSC argues that the arbitration provision is mandatory only during the pendency of the work under the subcontract, because § 46 states that work in progress will not be interrupted during the course of arbitration proceedings.

The Court notes that there is a liberal policy of promoting arbitration, *Stateside Machinery, supra,* at 240; *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 410 (2d Cir. 1959), *cert. dismissed,* 364 U.S. 801, 80 S.Ct. 682, 4 L.Ed.2d 618 (1960), and that:

> it has been held that there is a "federal rule that seemingly requires a clearly expressed intent *not* to arbitrate an issue before such issue can be ruled one for judicial determination; and, further, that if the issue is a doubtful one, the doubt is to be resolved in favor of arbitration."

*Stateside Machinery v. Alperin, supra,* 591 F.2d 240, *quoting Singer Co. v. Tappan Co.,* 403 F.Supp. 322, 329 (D.N.J.1975), *aff'd,* 544 F.2d 513 (3d Cir. 1976) (emphasis in the original). *See also Bristol Farmers Market v. Arlen Realty,* 589 F.2d 1214, 1218 (3d Cir. 1978).

The Court also notes that the agreement to arbitrate is extremely broad, covering "any controversy . . . with respect to any matter or thing involved in this Subcontract or construction project."

With these principles in mind, the Court finds NSC's contention that § 46 does not apply to its claims against NISCO to be meritless. First, NSC's argument that the mandatory arbitration provision only covers "appeals" and that its claims are not "appeals" ignores the plain meaning of § 46. Section 46 states that NSC is conclusively bound by any decision rendered by NISCO with regard to a dispute unless NSC seeks to "appeal" that decision to a panel of arbitrators. NSC has taken its claims to the Superior Court of California, a forum that is inconsistent with its exclusive contractual remedy of arbitration. Since NSC has chosen not to be bound by a decision rendered by NISCO on its claims, NISCO now seeks to compel NSC to proceed, if at all, with its contractually agreed upon mode of appeal.

Second, NSC's argument that § 6 of the contract is applicable is not supported by the record. Section 6 states, in pertinent part:

> In case of any dispute between the Subcontractor and the Company, Subcontractor agrees to be bound to the Company to the same extent that the Company is bound to Owner by the terms of the General Contract and by any and all decisions or determinations made thereunder by the party or board so authorized in the General Contract. Subcontractor also agrees to be bound to the Company to the same extent the Company is bound to Owner by the final decision of a court of competent jurisdiction, whether or not Subcontractor is a party to such proceeding.

While § 6 supersedes § 46, where applicable, there is nothing in the record to suggest that the owner of the project is in any way involved in the disputes at issue here. We conclude that it is not applicable.

Third, NSC's argument, that the mandatory arbitration provision applies only so long as work is in progress, is a contradiction of the clear meaning of § 46. NSC relies upon subsection (3) of § 46, which states that:

> [n]o dispute shall interfere with the progress of the general construction and Subcontractor shall proceed with its work.

NSC seeks to convince the Court that this subsection, which states on its face that work shall continue while arbitration is in progress, also stands for the proposition that the arbitration is mandatory only when work is progressing. Such a construction is in derogation of the plain language of § 46 and would clearly be in opposition to the manifest intent of the parties. Accordingly, we find that NSC's claims against NISCO arising out of the Berwick project are within the scope of § 46 of the subcontract. *See Warren Brothers Co. v. Cardi Corp.*, 471 F.2d 1304 (1st Cir. 1973).

### III. *The Making of the Agreement to Arbitrate*

■ NSC contends that the subcontract as a whole was not validly formed because NISCO's purported "acceptance" of NSC's "offer" differed with regard to a certain payment provision and, therefore, extinguished the offer as a matter of contract law. *See* Calamari and Perillo, Contracts, 2d Ed. 1977, Section 2–22, p. 68. Thus, NSC argues, because it can place the making of the entire contract in dispute, the making of the agreement to arbitrate is placed in dispute and the Court must proceed to trial on that issue. In support of its position, NSC asserts that a copy of a form subcontract consisting of five pages, plus an addendum of fifteen pages, was forwarded to NISCO as an offer to contract. At the bottom of the last page of the contract, beneath the signature line, the following paragraph was typed:

> Notwithstanding language to the contrary under Section 4 of this Subcontract, Company shall pay Subcontractor ninety percent (90%) of the total monies due Subcontractor, including monies due for all authorized changes, on February 15, 1977. The remainder of the total amount due Subcontractor shall be paid by Company on March 23, 1977 or on completion of work by Subcontractor, whichever is later.

Shortly thereafter, NISCO returned by mail a duly executed copy of the subcontract, identical in all respects to NSC's "offer," with the exception of the following change in the paragraph beneath the signature line:

> *If 90% of the work is completed and the completion percentage is mutually agreed to, the* Company shall pay
>
> > Subcontractor ninety percent (90%) of the total monies due Subcontractor, including monies due for all authorized changes, on February 15, 1977. The remainder of the total amount due Subcontractor shall be paid by Company on March 23, 1977 or on completion of work by Subcontractor, whichever is later. (Emphasis added.)

This alteration, NSC contends, does not constitute an acceptance. NISCO argues in response that the alteration does not constitute a "substantial modification" and thus is not a counteroffer. Secondly, NISCO argues that the parties complied in every detail with the terms of the subcontract and that NSC may not attack the formation of the subcontract at this late date.[2] Although the Court would tend to agree that the alteration was insubstantial, we find that we need not reach the issue of the formation of the subcontract as a whole because: (1) the agreement to arbitrate, § 46, is separable from the subcontract as a whole; (2) there is no allegation that the arbitration section was not validly accepted; and, (3) the arbitration clause is broad enough to include disputes as to the formation of the subcontract. Since there is no dispute as to the making of the arbitration agreement, NSC will be ordered to bring its claims in arbitration.

■ In *Prima Paint, supra*, the Supreme Court examined the issue of the separability of an arbitration agreement in the face of allegations of fraud in the inducement going to the formation of the contract as a whole. The Court noted that Congress provided the resolution in that the Arbitration

---

**2.** At the hearing, counsel acknowledged that the parties complied with the terms of the subcontract in every detail. Counsel for NSC also acknowledged that this "alteration" of NSC's offer was not discovered until after the filing of the instant petition.

Act requires the Court to order the parties to arbitration if the making of "the agreement for arbitration" is not in dispute, as opposed to the making of "the contract." *Id.*, at 403. This crucial distinction led the Court to conclude that agreements to arbitrate are separable from contracts in their entirety and that a court may only examine issues relating to the agreement to arbitrate and the performance thereof. *Id.*, at 404. Thus, a general allegation of fraud in the inducement will not place the making of the arbitration clause in dispute.

This principle was recently amplified by the Third Circuit in *Stateside Machinery, supra,* which stated:

> The question [whether a claim of fraud in the inducement of the contract generally must be decided by a court because it is not arbitrable] has been put to rest in federal law by . . . *Prima Paint* . . . . The Supreme Court there held under the United States Arbitration Act of 1925 that a general attack on a contract for fraud is *to be decided under the applicable arbitration provision as a severable part of the contract and that only where the claim of fraud in the inducement goes specifically to the arbitration provision itself should it be adjudicated by the court rather than the arbitrator.*

591 F.2d at 238, *quoting Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission,* 387 F.2d 768, 771 (3d Cir. 1967) (footnote omitted) (emphasis added).

NSC does not dispute the validity of this principle but argues that it should be limited to allegations of fraud in the inducement and not be extended to challenges to the validity of the contract on other grounds. We disagree with NSC and place emphasis on several factors. First, allegations of fraud in the inducement are very similar to a claim that the acceptance was not valid in that both, as a matter of contract law, are attempts to prove that the contract is not valid as a whole.

Second, to limit the principle articulated in *Prima Paint* and *Stateside Machinery* to allegations of fraud in the inducement would defeat the strong public policy favoring expeditious arbitration of complex issues, given that the parties have agreed to submit those issues to arbitration. If courts permitted recalcitrant arbitration-agreement parties to litigate the making of the agreement to arbitrate merely because they were able to develop allegations attacking *other* provisions of a contract, the remedy of arbitration would be emasculated.

Third, the Supreme Court in *Prima Paint* relied upon the same statutory language which NISCO seeks to rely on. In concluding that arbitration agreements are separable as an expression of manifest Congressional intent, the Court gave no indication that a different result should obtain depending upon the theory used by the recalcitrant party to attack the remainder of the contract. On the contrary, we find that the reasoning behind *Prima Paint* applies full force in this case.

Fourth, the arbitration clause in the instant case covers all disputes between NISCO and NSC "with respect to any matter or thing involved in this Subcontract *or construction project.*" Since this very broad inclusion clause is not limited to disputes "arising under" the Subcontract, but extends to any dispute arising out of the entire construction project, we find that it includes within it, and thus makes subject to mandatory arbitration, disputes as to the validity of the subcontract.

NSC seeks to rely upon *El Hoss Engineering and Transport Co. v. American Independent Oil Co.,* 289 F.2d 346 (2d Cir. 1961), in which the court found that certain articulated conditions precedent to the formation of the contract were also conditions precedent to the formation of the agreement to arbitrate. *Id.*, at 348. Thus, the respondent was permitted to show at trial that the conditions were not satisfied. *Id.*, at 351. NSC argues that allegations of failure of acceptance are closely analogous to allegations of the nonperformance of conditions precedent. We disagree. The *El Hoss* court found that the arbitration clause

was not separable, as a *factual* finding, and stressed both the clear language of the contract as a whole and the unique status of the contract as an auction-sale agreement. In the present case, there is no such factual support for NSC's position and we need not decide the validity of *El Hoss* after *Prima Paint.*

In the alternative, NSC argues that NISCO waived its rights to arbitration and is guilty of laches.[3] As this court explained in *Vespe Contracting Co. v. Anyan Corp.,* 399 F.Supp. 516 (E.D.Pa.1975):

> Waiver of the right to arbitration is not to be lightly inferred. Unless one's conduct has gained him an undue advantage or resulted in prejudice to another, he should not be held to have relinquished the right. The mere filing of a complaint or answer, without resultant prejudice to the objecting party, will not justify a finding of waiver.

*Id.,* at 522 (citations omitted). In the instant case, NISCO took part in the California litigation primarily in a defensive stance. NISCO properly challenged the personal jurisdiction of the court and we find that such a challenge does not constitute a knowing waiver. *See Necchi Sewing Machine Sales Corp. v. Carl, supra,* 260 F.Supp. at 668. Similarly, we find that the attempt to assert arbitration rights does not constitute a knowing relinquishment of arbitration rights, *see Network Cinema Corp. v. Glassburn,* 357 F.Supp. 169, 171 (S.D.N.Y. 1973), and that NISCO's filing of a counterclaim is merely an attempt to protect its position. *See Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir. 1968).

Secondly, NSC has not shown the requisite prejudice. *Id.* NSC argues that it was prejudiced by the passage of time and by the costs of opposing NISCO's motions. The Court's response is two-fold. First, NSC initiated the California action in violation of its contractual agreement. It cannot properly claim that it was prejudiced by NISCO's challenge to the jurisdiction of the court. Second, the passage of a short period of time does not constitute prejudice in the absence of specific allegations of how the passage of time prejudiced NSC. According to the terms of § 46, the parties have agreed that certain matters are to be arbitrated. However, although NSC agreed to be bound by NISCO's decision, the burden of going forward with arbitration is on NSC. NISCO is now asserting its arbitration rights in light of NSC's failure to proceed with its contractual burden. NSC may not now argue that the passage of a relatively short period of time, during which NISCO only attempted to protect its rights, constitutes a waiver. Accordingly, since the Court finds that there is no dispute as to the making of the agreement to arbitrate and that there is no dispute as to NSC's breach of that agreement, the Court will order NSC to proceed with its claims in arbitration.[4] An appropriate Order will be entered.

---

**3.** As a preliminary matter, we note that the issue of waiver and laches is one to be decided by the Court on the present record. In reaching this conclusion, we place special emphasis on several factors. First, the alleged basis for the defense is inextricably intertwined with the judicial process, since it is primarily premised upon NISCO's activities in the California court. Second, broad as the arbitration section is, we find that it does not include disputes as to waiver *through litigation.*

**4.** Section 46 states that the arbitration proceedings shall be filed in the Philadelphia Regional Office of the American Arbitration Association. Consequently, the Court will order NSC to proceed, if at all, by filing its claims at that office of the American Arbitration Association.