WEST FARGO PUBLIC SCHOOL DIS-
TRICT NO. 6 OF CASS COUNTY, State
of North Dakota, a Municipal Corpora-
tion, Plaintiff and Appellant,

v.

WEST FARGO EDUCATION ASSOCIA-
TION and Beverly Pratt, Defendants
and Appellees.

Civ. No. 9351.

Supreme Court of North Dakota.

Oct. 26, 1977.

Ohnstad, Twichell, Breitling, Arntson & Hagen, West Fargo, for plaintiff and appellant; argued by Jon M. Arntson, West Fargo.

Daniel J. Chapman, Bismarck, for defendants and appellees.

SAND, Justice.

The West Fargo Public School District (hereinafter Board), has appealed from an order of the Cass County district court denying its motion requesting the court to decide all issues raised by the pleadings in the declaratory judgment action and from the judgment of the court.

The Board brought this declaratory judgment action pursuant to Chapter 32–23, North Dakota Century Code, in order to obtain a declaration of its rights and obligations under the contract negotiated between the Board and the teachers of the school district, represented by the appellee, West Fargo Education Association (hereinafter Association). This action arose out of a grievance filed under the contract by co-appellee, Beverly Pratt, a teacher represented by the Association.

Mrs. Pratt requested sick leave benefits for a period of disability due to maternity reasons in a letter dated 13 December 1975 to the Board's school superintendent. She asked for twenty sick leave days for the period of 5 January 1976 to 2 February 1976.

The Board met on 13 January 1976 and instructed the school superintendent to "correspond with Mrs. Pratt and inform her of the negotiated agreement and the availability of the other leave that could be used." By letter dated 14 January 1976, the school superintendent informed Mrs. Pratt that

"Since the leave policy in existence now and at the time you entered into your teaching contract has no provision under which your request could be granted and since the sick leave policy is an item in the negotiated agreement, it is impossible for me to grant your request."

The superintendent enclosed a copy of the Board's Policy 3–9100, dated 14 March 1972, relating to absence from work for maternity reasons. Policy 3–9100 provides, in part:

"It is recommended that no teacher begin the school year knowing that her services will be interrupted due to maternity leave. Exceptions will be at the discretion of the building principal. Leave without pay for maternity reasons will be granted up to twelve consecutive months to any teacher who becomes pregnant. Reinstatement must begin no later than the beginning of the following school year. Persons using such leave are encouraged to start their leave when their condition begins to interfere with their normal classroom duties as determined by the building principal or personal health as determined by their doctor. Sick leave does not apply in these cases. . . ."

On 13 February 1976 Mrs. Pratt filed a grievance report form with the principal of her school objecting to the Board's denial of paid sick leave benefits for her period of disability due to pregnancy. Mrs. Pratt listed 30 January 1976 as the "date cause of grievance occurred and/or grievant had knowledge thereof." She asserts that she should have received a check on that day, but that she did not receive one until 14 February 1976.

In filing the grievance report form with the principal of her school, Mrs. Pratt initiated step one of the grievance procedure outlined in The Procedural Agreement and Addendum adopted by the Board and the Association. According to the procedural agreement, "the receipt of the grievance at the Step One must be within 15 days from the date of the occurrence of the event giving rise to the grievance." The principal disposed of Mrs. Pratt's grievance by citing the procedural agreement's definition of a grievance and stating:

"Since I find no misinterpreted or inequitable application of established policy I believe that this is not a grievable [sic] issue."

"Grievance" is defined in the procedural agreement and addendum:

"A grievance is a claim based upon an event or condition which affects the conditions or circumstances under which a teacher works, allegedly caused by misinterpretation or inequitable application of established policy or the terms of a contract.

"A grievance evolves out of the manner in which a policy has been interpreted."

In disposing of Mrs. Pratt's grievance, the principal also disputed the timeliness of her filing. He noted that the Board acted on her request at its 13 January 1976 meeting; that a letter informing her of the Board's action was mailed 14 January 1976, and that he believed the last date available to her for filing a grievance was 27 January 1976.

Mrs. Pratt proceeded to step two of the grievance procedure on 25 February 1976, stating that

"The grievant and the Association contend that the Board has failed to comply with the EEOC [Equal Employment Opportunity Commission] guidelines as they affect the interpretation of the negotiated sick leave benefits . . . ."

At the termination of step two in the grievance procedure, the superintendent communicated to Mrs. Pratt essentially the same statement and decision that the principal had earlier communicated to her after completion of step one.

Step three of the grievance procedure involved a special board of education meeting held 30 March 1976. After the step three process was completed, the president of the Board notified Mrs. Pratt of the Board's finding that she had not timely filed her grievance. The Board found that Mrs. Pratt was informed of the Board's decision to deny her sick leave pay for maternity reasons on 14 January 1976, and that 31 days elapsed between that date and the date Mrs. Pratt filed her grievance. As mentioned earlier, the step one process requires that a grievance be filed "15 days from the date of occurrence of the event giving rise to the grievance."

Although the Board noted that its decision was based on Mrs. Pratt's failure to timely file her grievance, it commented on the grievance:

"The Board policy in the instant case is very clear. The maternity leave policy is set forth in 3–9100. It states in part '* * * Sick leave does not apply in these cases * * *' Since no teacher has received sick pay while on maternity leave, there was no 'inequitable application of established policy' when the Board denied Mrs. Pratt sick leave. Furthermore, the policy is so clear there can be no 'misinterpretation' of established policy.

"Nor is there any 'misinterpretation or inequitable application of . . . the terms of a contract.' The contract, although providing for sick leave, does not apply sick leave benefits for periods of disability due to pregnancy."

The Board concluded that the issue of maternity sick leave should be presented at the negotiating table or at a meeting between the Board of Education and the Association, as provided by Article I, Section 3, of the contract.

In a letter dated 14 April 1976, the Association notified the Board that it was not satisfied with the step three disposition of the grievance and requested that the issue be submitted to binding arbitration, the fourth and final step outlined in the procedural agreement.

The Board, rather than submit the grievance to binding arbitration, brought this declaratory judgment action in Cass County district court on 30 April 1976. In its action it alleged that the provision for binding arbitration was unenforceable in accordance with § 32–04–12(3), NDCC, and that the alleged grievance by Mrs. Pratt did not come within this agreement. The Board also sought an interpretation of the contract and an adjudication of the rights of the parties thereunder.

After a hearing, the district court issued its memorandum opinion, dated 30 September 1976, which concluded that Mrs. Pratt and her representative, the Association, had

the right under the contract to request binding arbitration, step four of the procedural agreement. The court also stated that the Board should abide by the terms of the contract and that "The issues of the dispute will then be resolved by the arbitor [arbitrator], and such determination will be binding on the parties."

The Board, on 13 October 1976, filed a motion requesting that no findings of fact, conclusions of law, order for judgment or judgment be entered in this action until all issues presented to the court for its determination have been decided by the court. The Board further moved the court for a decision on all issues raised by the pleadings.

The Board, in support of its motion, argued that the trial court had not decided all the pertinent issues as required by the Declaratory Judgment Act, Chapter 32–23, NDCC, including:

1. Is the alleged grievance a grievance as defined by the contract?
2. Was the alleged grievance timely filed as required by the terms of the contract?

Following a hearing on the motion held 8 November 1976, the court denied the motion, finding that those issues were factual determinations to be decided by the arbitrator. On 23 March 1977, the Board filed a notice of appeal from the order of the court denying its motion, dated 10 November 1976, and from the judgment of the court, dated 31 January 1977.

The Board contends that binding arbitration is not enforceable, and in support of its position refers to § 32–04–12(3), NDCC, which provides:

"The following obligations cannot be enforced specifically:

. . . . .

3. An agreement to submit a controversy to arbitration."

This section had its origin in the 1877 Code and has not been amended. It contains other "unenforceable obligations," such as rendering personal service, or employing another for personal service. The statute obviously is based upon the proposition that a court order most likely would be futile because it would be impossible for the court to coerce the rendering of a personal service. The saying, "You can lead a horse to water but you cannot compel it to drink" would be somewhat descriptive of these situations. The presence of an adequate remedy at law, including but not limited to damages, may be another reason why specific performance for personal service was made unenforceable by legislation. Also, the constitutional prohibition against involuntary servitude may be another reason.

We note, however, that the Legislature specifically acknowledged the validity of binding arbitration in § 15–38.1–12(1)(b), NDCC, which states:

"1. The school board, or its representatives, and the representative organization, selected by the appropriate negotiating unit, or its representatives, shall have the duty to meet at reasonable times at the request of either party and to negotiate in good faith with respect to:

. . . . .

b. The formulation of an agreement, which may contain provisions for binding arbitration."

This section was enacted in 1969. We also note that the Legislature, in § 24–02–26, NDCC, employed compulsory arbitration by providing that certain controversies arising out of contracts shall be submitted to arbitration. This provision has been held constitutional by the North Dakota Supreme Court in *Hjelle v. Sornsin Construction Co.*, 173 N.W.2d 431 (N.D.1970), where the state highway commissioner was required to arbitrate when the subcontractor asserted his right to arbitrate. We further observe that the Legislature authorized arbitration in all matters, excepting title to real property, in Chapter 32–29, NDCC. This convinces us that binding arbitration is not against public policy.

In the absence of fraud or deception, which were not claimed by the Board, the agreement to submit certain disputes to binding arbitration is valid.

■ The Board also contends that it has the right to revoke its agreement to submit to binding arbitration and cites § 32–29–20, NDCC, for its authority.

We believe that § 32–29–20, NDCC, was designed for instances where a dispute arises and the parties agree to arbitration; whereas in the instant situation the agreement to arbitrate was entered into before the dispute arose. Thus, this section may have only a limited application to the present situation. In any event, it does not constitute authority to revoke an agreement to arbitrate without suffering the attending consequences nor does it prevent the court from fashioning an appropriate remedy.

■ Mere reliance on § 32–04–12(3), NDCC, claiming or contending that binding arbitration is unenforceable does not dissolve the lawful agreement to arbitrate voluntarily entered into by the parties because the party refusing to abide by an agreement to arbitrate may be subjected to appropriate damages, and in addition, depending on the situation, the court may devise a remedy appropriate to the situation, such as naming an arbitrator in place of the recalcitrant party. In this respect we take note of the district court's decision which, among other things, said:

"That if the parties hereto fail to abide by this declaratory judgment, the Court will entertain a petition for further relief pursuant to the provisions of Section 32–23–08 of the North Dakota Century Code."

■ As to the remedies available, the court could also take into account the recognized rule of construction of long standing that a more specific provision, § 15–38.1–12(1)(b), enacted subsequent to a prior enactment, § 32–04–12(3), NDCC, is to prevail if there is an irreconcilable conflict. But this in itself does not resolve whether or not a declaratory judgment action is appropriate under these circumstances.

■ While a declaratory judgment action is intended to provide a method whereby parties to a justiciable controversy may

have it determined by a court in advance of any invasion of right or breach of obligation, *Park District City of Fargo v. City of Fargo,* 129 N.W.2d 828 (N.D.1964), it nevertheless must involve an actual controversy of a justiciable character between parties having adverse interests. No action or proceedings lie under a declaratory judgment Act to obtain a decision which is merely advisory or which merely determines abstract questions. *Asbury Hospital v. Cass County,* 72 N.D. 359, 7 N.W.2d 438 (1943); and *Langer v. State,* 69 N.D. 129, 284 N.W. 238 (1939).

In *Iverson v. Tweeden,* 78 N.D. 132, 48 N.W.2d 367 (1951), we again quoted with approval from previous cases:

"The requisite precedent facts or conditions which the courts generally hold must exist in order that declaratory relief may be obtained may be summarized as follows: (1) there must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination."

These principles fully apply to the matter under consideration in this case.

■ The Board, in its pleadings, has not stated, nor taken the position, that it has refused or will refuse to arbitrate. Binding arbitration is an integral part of the agreement. A breach of this provision could be the equivalent of breaching the entire contract.

For these reasons, we do not believe this issue is ripe for definitive determination under these circumstances.

We now consider the second issue, under which the Board contends that the question of whether or not Mrs. Pratt can use sick leave benefits for a period of disability due to maternity reasons is not an arbitrable

issue because it does not come within the contractual definition of a "grievance" as stated in the procedural agreement and addendum.

■ We recognize that arbitration is a matter of contract and that a party is contractually bound to arbitrate only those disputes which they have agreed to arbitrate. *National Railroad Passenger Corporation v. Chesapeake and Ohio Railway Company,* 551 F.2d 136 (7th Cir. 1977).

Declaratory judgment actions are authorized by § 32–23–02, NDCC, to determine contractual rights, and provides:

"Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and may obtain a declaration of rights, status, or other legal relations thereunder."

After a careful search, we did not find any cases under the North Dakota declaratory judgment Act involving labor and management agreements to submit to binding arbitration. We, however, became aware that United States statutes and case law exist on this subject and examined them. From this we found all United States courts, except tax courts, have the authority under 28 U.S.C.A. 2201 to hear and determine declaratory judgment actions, and pursuant to the Labor Management Relations Act, 29 U.S.C.A. 185, the same courts have been given authority to resolve disputes involving labor contracts and agreements.

■ Even though some differences exist in nonessential matters, we nevertheless find a definite similarity between the United States statutes (28 U.S.C.A. 2201 and 29 U.S.C.A. 185), and the North Dakota State laws (Ch. 32–23, NDCC) which authorize the North Dakota courts to entertain and determine declaratory judgment actions involving contracts. The term "contract" includes agreements between school boards and teachers, which, in the broad sense, are labor and management contracts. We therefore believe that the federal case law on this topic, although not mandatory, is persuasive.

Both parties agree that the declaratory judgment Act, Ch. 32–23, NDCC, applies to the agreement between the Board and the Association, but they disagree to what extent it applies. The Board claims the court should resolve all points, including the timely filing of the dispute; whereas the Association contends the court should resolve only whether or not the controversy or dispute comes within the arbitration provision, but should not resolve the actual controversy or dispute. The scope of the agreement to arbitrate in this respect is the focal issue. The Board contends that the question of whether or not Mrs. Pratt can use sick leave benefits for a period of disability due to maternity reasons is a matter not covered by the agreement and does not constitute a grievance, as stated in the procedural agreement and addendum. The Association contends to the contrary.

The issue under consideration here involves a labor contract negotiated pursuant to § 15–38.1–12(1)(b), NDCC, and is similar in nature to labor contracts interpreted by the federal courts under the Labor Management Relations Act.

■ On the issue of whether or not the timely filing of the sick leave complaint comes within the arbitration provision or is a matter to be decided by the court, we believe the decision of the United States Supreme Court in *International Union of Operating Engineers, Local 150, AFL–CIO v. Flair Builders, Inc.,* 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972), has application and is decisive of this point:

"But once a court finds that . . . the parties are subject to an agreement to arbitrate, and that agreement extends to 'any difference' between them, then a claim that <u>particular grievances are barred by laches is an arbitrable question</u> under the agreement." [Underscoring ours.]

Under this concept, if it is decided that the sick leave question is arbitrable under the agreement and addendum, then the question whether or not it was timely filed also must be decided by the arbitrator.

The United States Supreme Court, in its Steelworkers Trilogy,[1] articulated a public policy in favor of arbitrating disputes arising under collective bargaining agreements. In *United Steelworkers of America v. American Manufacturing Company*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960), the Supreme Court determined that when parties have agreed to submit all contractual disputes to an arbitrator, the role of the court is very limited.

"It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for."

The Board, in the instant case, asserts that the steps outlined in the procedural agreement and addendum do not govern Mrs. Pratt's claim because it is not a grievance caused by "misinterpretation or inequitable application of established policy or the terms of a contract." The Board argues that policy 3–9100, which was in effect at the time of Mrs. Pratt's claim, did not provide sick leave for women absent from work for maternity reasons. Finally, the Board maintains that there has been no inequitable application of its maternity policy, nor has it agreed to any other policy in the contract executed with the Association.

■ A determination of whether Mrs. Pratt's claim is within the scope of the arbitration agreement is an appropriate decision for this Court to make. Judge Register, in *Local No. 725, International Union of*

Operating Engineers v. Standard Oil Company of Indiana*, 186 F.Supp. 895, 899 (D.N.D.1960), said that the courts have the duty of determining whether a reluctant party has breached a promise to arbitrate. This is a question reserved exclusively for the courts, and not for the arbitrator.

In *Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960), the United States Supreme Court said that

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

This principle was reaffirmed in *Gateway Coal Company v. United Mine Workers of America*, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974), in which the Court also observed

"No obligation to arbitrate a labor dispute arises solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so."

We must, therefore, examine the contract which provides for arbitration.

The procedural agreement and addendum executed by the Board and the Association contains no provision excluding or limiting arbitration of a particular grievance. However, the Board, in its oral argument before this Court, attempted to fashion such an exclusion clause by narrowly interpreting the contractual definition of grievance to exclude the instant claim. The only limitation concerning arbitration of a grievance pursuant to the procedural agreement and addendum is imposed on the arbitrator. The agreement states that "The arbitrator shall have no power to alter the terms of this Agreement."

1. *United Steelworkers of America v. American Manufacturing Company*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; *United Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *United Steelworkers of America v. Enterprise Wheel and Car Corporation*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

Section 2 of the procedural agreement and addendum covers sick leave for employees. However, there is no indication in the agreement as to whether sick leave may be used for a period of disability due to maternity reasons.

The instant agreement contains no exclusion clause exempting maternity sick leave from arbitration. The agreement states that both parties have agreed to be bound by the arbitrator's recommendation.

■ We believe that the burden of proof is on the party proposing to show that an issue is not arbitrable. See *Chippewa Valley Schools v. Hill*, 62 Mich.App. 116, 233 N.W.2d 208 (1975), at 211.

■ In *United Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 585, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409, the United States Supreme Court said:

"In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad."

We construe this to mean that where there is a broad arbitration clause and no exclusion clause, doubt should be resolved in favor of arbitration.

■ Because sick leave, without referring to policy 3–9100, is included in the procedural agreement and addendum and because there is no exclusion clause removing such a dispute from arbitration, we resolve any doubts in favor of arbitration.

■ During oral argument, the Board recognized that the provisions of the agreement and addendum were integral parts of the agreement. It necessarily follows that the arbitration provision is not severable from the rest of the agreement.

We conclude that the maternity sick leave dispute involves an issue of contract interpretation subject to the arbitration agreement. We will not determine the merits of the sick leave dispute. We merely determine that the arbitrator will have the role of deciding whether or not Mrs. Pratt is entitled to sick leave for maternity reasons. The Board and the Association agreed to settle such a dispute by arbitration and we will not preempt their agreement by rendering a decision on the merits of this case. The parties involved here bargained in their contract for arbitration, not for determination by the courts. We must respect the agreement, which provides that the arbitrator "shall have no power to alter the terms of the agreement."

If we were to do more than decide whether or not the dispute about the maternity sick leave constitutes a grievance under the agreement and addendum, we would in effect invade the province of the arbitrator. It would effectively invalidate and render void the agreement to be bound by arbitration.

The order denying the relief requested by the Board and the judgment are affirmed.

ERICKSTAD, C. J., and PAULSON and VOGEL, JJ., concur.

PEDERSON, Justice, dissenting.

Although I agree with many of the legal principles pronounced in the majority opinion, I do not agree that they are properly applied to this case and, accordingly, I disagree with the conclusion. The order denying the declaratory relief requested by the School District should be reversed and the trial court should be directed to enter a judgment determining that there is no right or duty to arbitrate the question propounded by the West Fargo Education Association and Beverly Pratt.

The majority takes note of the compulsory arbitration provided for highway contract disputes in § 24–02–26, NDCC, and ff, and says that this has been held constitutional in *Hjelle v. Sornsin Construction Company*, 173 N.W.2d 431 (N.D.1970). As the loser of that case, I cannot read that opinion as deciding the constitutionality of the statute in any manner not pure obiter dictum.

Only the highway commissioner challenged the statute's constitutionality. The court clearly held that the commissioner had no standing to make that assertion. Every case and authority cited or discussed in *Hjelle v. Sornsin, supra,* support a conclusion that mandatory arbitration, with no right of judicial review on the merits, is invalid. If the contractor, rather than the commissioner, had asserted invalidity, I have little doubt that the assertion would have been upheld. Some of the issues which are involved in arbitration under § 24–02–26, NDCC, are not present when considering arbitration pursuant to the authorization of § 15–38.1–12(1)(b), NDCC, and vice versa. Disputes between public employers and their employees are, first of all, governed by the nonbinding mediation statute. Chapter 34–11, NDCC. What effect this statute has was not considered by the parties, but should have been.

*Hjelle v. Sornsin, supra,* was only chapter one of that story. That majority opinion stated: "In the instant case, however, the Subcontractor had no contract with the State and thus would have no right under that statute—or any other statute that we know of—to assert its claim against the State." In spite of this obvious lack of a basis for the claim, this Court decided that the claimant was entitled to arbitrate. One justice dissented.

Chapter two is told in the case entitled *Nelson Paving Co., Inc. v. Hjelle,* 207 N.W.2d 225 (N.D.1973), where this Court refused to review the very substantial award (which it said in *Hjelle v. Sornsin* had no basis in law) on questions of fact or of law and, in effect, held that in the absence of "fraud" an award in arbitration will not be set aside.

This case gives this Court the opportunity to avoid repetition of a miscarriage of justice. A refusal to consider legal questions before arbitration and a refusal to make any review of the merits (of law or of fact) on an appeal from an arbitration award, has shaken any confidence that ordinary citizens ever had in arbitration proceedings. It should not be so. The judicial system needs

the assistance arbitration proceedings can provide in resolving disputes. Arbitration should be a preferred method—it is simpler, quicker, cheaper, and is not hampered by judicial tradition. But the courts have to be realistic.

When the matter in dispute is a judicial question, the courts ought to fulfill their proper role. Whether depriving Beverly Pratt of maternity-sick leave benefits violated her constitutional or legal rights is not a matter that this Court should shunt off onto an arbitrator whose decision cannot be reviewed unless there is fraud. The fact that the majority opinion points out that the agreement to arbitrate says that the arbiter shall have no power to alter the agreement—after *Nelson Paving v. Hjelle, supra*—gives me no assurance that the arbitrator will not amend the agreement (actually or in effect), and we will have no way to correct it.

Judgment should be reversed.