COUNTRY KITCHEN OF MOUNT VER-
NON, INC., a North Dakota Corpora-
tion, Plaintiff and Appellant,

v.

COUNTRY KITCHEN OF WESTERN
AMERICA, INC., Defendant,

and

Country Kitchen International-West, Inc.,
Defendant and Appellee.

Civ. No. 9703.

Supreme Court of North Dakota.

April 23, 1980.

Neil Thompson, of Foughty, Christianson & Thompson, Devils Lake, for plaintiff and appellant.

Conmy, Feste & Bossart, Fargo, of counsel, and Lawrence R. Commers and Pamela M. Harris, of MacIntosh & Commers, Minneapolis, Minn., for defendant and appellee; argued by Ms. Harris.

VANDE WALLE, Justice.

Country Kitchen of Mount Vernon, Inc. ("Mt. Vernon"), appeals from an order of the Ramsey County district court entered on October 22, 1979, dissolving a temporary injunction previously ordered by the district court restraining Country Kitchen of Western America, Inc. ("C.K.W.A."), and Country Kitchen International-West, Inc. ("C.K. I.W."), from continuing with their application for arbitration within the State of Washington, and dismissing without prejudice Mt. Vernon's summons and complaint. We affirm.

On October 29, 1975, Mt. Vernon, as franchisee, entered into a franchise license agreement ("agreement") with C.K.W.A. C.K.W.A. was an area licensee of Country Kitchen International, Inc. ("C.K.I."), and held the rights to develop Country Kitchen restaurants in several States, including North Dakota and Washington.

On March 29, 1979, C.K.I.W., a wholly owned subsidiary of C.K.I., acquired all the outstanding stock of C.K.W.A. Pursuant to the agreement, C.K.I.W. was also assigned all the rights that C.K.W.A. had under the agreement.

On the same day, Mt. Vernon notified C.K.I.W. that it was unilaterally terminating their agreement and intended to dispose of its Country Kitchen outlets. C.K.I.W. responded that it would not authorize such termination and that any attempt at unilateral termination was contrary to the terms of the agreement.[1] Nevertheless, Mt. Vernon sold the businesses not as Country Kitchen but as ordinary restaurants.

Subsequently, C.K.I.W. filed a demand for arbitration pursuant to Article 25 of the

1. In support of its belief that unilateral termination was contrary to the terms of the agreement, C.K.I.W. cites Article 2 of the agreement

which states the term of the agreement shall be for 20 years.

agreement.[2] Mt. Vernon objected to arbitration by the Seattle office of the American Arbitration Association on the ground that the contract was invalid and that the Association did not have jurisdiction to hear the matter, but the Association informed Mt. Vernon that it would proceed with arbitration.

Mt. Vernon then secured a temporary injunction and order to show cause in the district court of Ramsey County, North Dakota, restraining C.K.W.A. and C.K.I.W. from continuing their demand for arbitration. In addition, Mt. Vernon commenced an action in the same court praying that the agreement be declared null and void because C.K.W.A. had failed to register the franchise offer as required under the Franchise Investment Law, Chapter 51–19, N.D.C.C.

At the hearing on the order to show cause, C.K.I.W. moved for, among other things, dissolution of the temporary injunction and dismissal of the complaint. The district court found the agreement to be presumptively valid and therefore the provisions for arbitration to be mandatory. It dissolved the temporary injunction and restraining order and dismissed Mt. Vernon's summons and complaint without prejudice. Mt. Vernon now appeals from the order dissolving the temporary injunction and dismissing the summons and complaint.

Mt. Vernon contends that the agreement is void and unenforceable because the offer of the franchise had not been registered as required by Section 51–19–03, N.D.C.C.[3] C.K.I.W. contends that a claim the agreement is void *ab initio* should be reserved for the arbitrator.

In support of its contention, C.K.I.W. cites *Prima Paint v. Flood & Conklin*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), wherein the United States Supreme Court held that a claim of fraud in the inducement of a contract was to be resolved pursuant to the arbitration provision of that contract, where there was no claim of fraud in the inducement of the arbitration clause itself. This rule, which leaves certain issues to be resolved by arbitration rather than by the courts, has been extended by the Federal courts to also include the issue of laches [*Operating Engineers v. Flair Builders, Inc.*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972); see also *West Fargo Public Sch. Dist. v. West Fargo Ed.*, 259 N.W.2d 612 (N.D.1977)] and disputes over offers and acceptances [*Nuclear Installation, Etc. v. Nuclear Services*, 468 F.Supp. 1187 (E.D.Pa. 1979)].

Further support for C.K.I.W.'s position is found in *Allison v. Medicab Intern., Inc.*, 92 Wash.2d 199, 597 P.2d 380 (1979). This was an action brought by a franchisee to rescind a franchise agreement. Like Mt. Vernon, the franchisee in the Washington case alleged that the failure of the defendant to register made the agreement void. See R.C.W. 19.100.020.[4] The Washington court held:

**2.** This article provides, in part:

"(A) All disputes and controversies between the LICENSOR and LICENSEE arising under Articles 1, 2, 3, 6(B) through 6(F), 7, 9(A)(b), 9(A)(d), 9(D), 10 through 22, 24, 25 and 26 of this LICENSE AGREEMENT shall be determined by Arbitration according to the Rules and Regulations of the American Arbitration Association except as provided otherwise in this LICENSE AGREEMENT. The Arbitrator's decision and award of a dispute and/or controversy shall be in writing and shall be final and binding on the LICENSOR and LICENSEE, and the decision of the Arbitrator shall be deemed to be a judgment and/or decree and may be entered as such in any Court of competent jurisdiction. Unless agreed to in writing by the LICENSOR and LICENSEE, any Arbitrator selected to arbitrate a dispute or controversy

must have at least five (5) years experience in the restaurant or restaurant related business.

**3.** This section provides:

"*Registration of offer.* It shall be unlawful for any person to offer or sell any franchise in this state unless the offer of the franchise has been registered under this chapter or exempted under section 51–19–04."

**4.** This section provides:

"*Unlawful to sell or offer to sell franchise if unregistered or not exempt.* It is unlawful for any franchisor or subfranchisor to sell or offer to sell any franchise in this state unless the offer of the franchise has been registered under this chapter or exempted under R.C.W. 19.100.-030."

"The failure to register does not make the agreement void. See *Fleetham v. Schneekloth*, 52 Wash.2d 176, 324 P.2d 429 (1958). It is simply a controversy 'arising out of or in connection with [the] Agreement' and as such becomes subject to the arbitration agreement enforceable under the federal arbitration act." 92 Wash.2d at 203–204, 597 P.2d at 382.

We agree with the Washington court that an arbitration board could consider the effect on the parties of the franchisor's failure to register. But when the issue of whether or not the contract is void for failure to register the franchise offer is presented directly to this court, and we have not previously considered the issue, we believe it is appropriate for this court to address the question.

In the absence of any allegations and proof that the failure to register caused harm to the franchisee, we do not believe the Legislature intended franchise agreements to be void in their inception because the franchisor failed to register the offer. The Franchise Investment Law itself provides civil and criminal remedies in the event a violation of the Act occurs. Section 51–19–12, N.D.C.C., states, in part:

"1.   Any person who violates any provision of this chapter or any rule or order issued by the commissioner thereunder shall be liable to the franchisee or subfranchisor who may bring an action for damages, for rescission, or for such other relief as the court may deem appropriate.

.     .     .     .     .

"3.   In any action under this section, the franchisee or subfranchisor, if successful, shall also be entitled to costs and disbursements plus reasonable attorney's fees.

.     .     .     .     .

"5.   No action shall be brought under this section after three years from the date of such sale or contract for sale nor more than one year after the purchaser has received information as to matter or matters upon which the proposed recovery is based.

"6.   Except as explicitly provided in this section, no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this chapter or any rule or order issued by the commissioner thereunder. Nothing herein shall limit any liability which may exist by virtue of any other statute or under common law if this chapter were not in effect."

Section 51–19–14, N.D.C.C., states:

"1.   Any person who willfully violates any provision of this chapter or who willfully violates any rule or order under this chapter shall be guilty of a class B felony; but no person may be imprisoned for the violation of any rule or order if he proves that he had no knowledge of the rule or order.

"2.   Any person who willfully employs, directly or indirectly, any device, scheme, or artifice to defraud in connection with the offer or sale of any franchise or willfully engages, directly or indirectly, in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the offer, purchase, or sale of any franchise shall be guilty of a class B felony.

"3.   Nothing in this chapter limits the power of the state to punish any person for any conduct which constitutes a crime."

The requirement of registration is a provision of the chapter to which Sections 51–19–12 and 51–19–14, N.D.C.C., are applicable. Failure of the franchisor to register the offer, when required by the Act, is a violation of the Act. There is nothing in this chapter to indicate that the failure to register should be treated differently from any other violation of the Act. As noted by the Federal Court of Appeals in *Ets-Hokin & Galvan, Inc. v. Maas Transport, Inc.*, 380

F.2d 258, 260 (8th Cir.), *cert. denied* 389 U.S. 977, 88 S.Ct. 481, 19 L.Ed.2d 471 (1967):

"A contract in violation of a statutory provision generally is void or illegal only if the legislative body enacting the statute evidences an intention that such contracts be considered void or illegal. Otherwise, even though the parties to a contract may be subject to a statutory penalty as the result of performing a contract, the contract itself remains in full force and effect." [Citations omitted.]

The Legislature has provided remedies in the Act itself for all violations of the Franchise Investment Law, including the failure of a franchisor to register. Because we believe these remedies to be exclusive, we conclude that if a franchisor violates the Act by failing to register, a contract between that franchisor and a franchisee is not void as against public policy in the absence of legislative intent, express or implied, to that effect.

The district court order vacating the temporary injunction and dismissing the complaint without prejudice is affirmed.

SAND and PAULSON, JJ., and EVERETT N. OLSON, District Judge, concur.

OLSON, District Judge, sitting in place of ERICKSTAD, C. J., disqualified.

PEDERSON, Acting Chief Justice, concurring specially.

I concur in the results. The injunction was properly dissolved. If Mt. Vernon had brought an action in a North Dakota court under § 51–19–12(1), NDCC, for damages or rescission within three years of the investment in the franchise (§ 51–19–12(5), NDCC), no agreement to arbitrate in the franchise agreement could prevent our court from acting.

When the Seattle office of the American Arbitration Association announced, in the face of an allegation that no valid contract existed, that it would nevertheless proceed with the arbitration, it illustrated the confusion as to what arbitrators can do. It is a "chicken-and-egg" situation. Unless there is a valid contract with a valid provision for arbitration, there can be no arbitrators to rule whether or not there is a valid contract. When arbitrators are confronted with this problem, the "bootstrap" doctrine can be expected to take over and the loser has to prove fraud to get a court to consider the question. See Chapter 32–29, NDCC.

The only legal proposition offered by Mt. Vernon in these proceedings is that the franchise contract is void because of Country Kitchen of Western America's failure to comply with the North Dakota Franchise Investment Law (Ch. 51–19, NDCC). The majority opinion correctly concludes that this court can decide that question and, also, correctly concludes that this contract is not void for that reason. Because construction of a contract is a question of law for the courts, see *Stetson v. Blue Cross of North Dakota*, 261 N.W.2d 894, 896 (N.D. 1978), it may very well be that other questions of law may arise in this dispute where the arbitrators will not be able to preempt the authority and obligation of the judiciary. See my dissent in *West Fargo Public Sch. Dist. v. West Fargo Ed.*, 259 N.W.2d 612, 620 (N.D.1977).