Delmar **ERICKSON**, Plaintiff
and Appellee,

v.

**FARMERS UNION MUTUAL INSURANCE COMPANY**, Defendant
and Appellant.

Civ. No. 9986.

Supreme Court of North Dakota.

Oct. 28, 1981.

Donald A. Negaard, of Pringle & Herigstad, Minot, for plaintiff and appellee.

Thomas O. Smith, of Zuger & Bucklin, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

Farmers Union Mutual Insurance Company appealed from summary judgment granted to Delmar Erickson by the district court of Burleigh County. The summary judgment awarded Erickson $14,332.59 for damage to property covered by a Farmers Union Mutual Insurance Company policy. We affirm.

Erickson erected a steel building on his farmstead in July of 1978 and purchased an insurance policy from Farmers Union Mutual Insurance in November of 1978. The policy was in effect when the steel building was damaged during a windstorm in June of 1979. Erickson filed a claim with Farmers Union as the policy required. When Erickson and Farmers Union failed to agree upon the amount of the loss they turned to a provision in the insurance policy to resolve their differences. The policy provides that each party select a disinterested appraiser and the appraisers then select an umpire. As occurred here, if the appraisers cannot agree upon an umpire a request may be made to a court of record to appoint one. The appraisers then submit their differences on cash value and amount of loss to the umpire. The umpire, appointed by the district court, determined that the amount of loss was $13,952.64. Erickson began an action in district court to recover that amount from Farmers Union. The trial judge granted Erickson's motion for summary judgment and denied Farmers Union's motion to dismiss.

The only issue is whether or not Erickson's motion for summary judgment should have been granted.

The standards for reviewing an appeal to this court from a summary judgment were stated in *Benson County Coop. Credit Union v. Central Livestock*, 300 N.W.2d 236, 239 (N.D.1980):

"On appeal from a summary judgment, the evidence must be viewed in a light most favorable to the party against whom the summary judgment was granted. [Citation omitted.] This court cannot decide disputed issues of material fact; it may only determine whether a genuine issue exists and whether the law was applied correctly. Accordingly, we reverse the grant of a summary judgment motion if it appears from the record that there is an unresolved issue of material fact. Summary judgment is not appropriate if the moving party is not entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from undisputed facts. [Citations omitted.] Under Rule 56(c), North Dakota Rules of Civil Procedure, we may consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits in determining whether or not there is a genuine issue of material fact."

We believe that the trial court properly granted Erickson summary judgment. Viewing the evidence in the light most favorable to Farmers Union we agree with the trial court that there was no unresolved issue of material fact and no genuine issue. Under the facts here, Erickson was entitled to summary judgment as a matter of law.

The thrust of Farmers Union's argument is that the procedure followed was not arbitration but appraisal. The trial court ruled that the parties proceeded as if their actions constituted an arbitration. The language of the insurance policy is as follows:

"Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of cash value and loss . . . ."

As Farmers Union has pointed out, there is a difference between "appraisal" and "arbitration." Chapter 32–29, N.D. C.C.; 5 Am.Jur.2d, *Arbitration and Award*, § 3. Although it appears that the insurance policy provided for appraisal and not arbitration that is not a basis for determining that the trial court erred in this situation. The representations of Farmers Union and the insurance policy resolve all issues of material fact.

The "appraisal" section in the insurance policy provides that the two appraisers shall submit, to an umpire, their differences in actual cash value and loss. The next sentence reads: "An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss." The umpire's resolution becomes an award when it is written, itemized, and then concurred in by one of the appraisers. The policy provides that the award is payable:

"When loss payable. The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided."

This language conditions Farmers Union's liability upon proof of loss and an ascertainment of the loss. Farmers Union admits in its petition for the appointment of the umpire that Erickson submitted a proof of loss as required by the policy. We believe that unless Farmers Union agreed the loss was covered it would not have proceeded with the appraisal procedure. To do so would have been a useless act and, when it petitioned for the appointment of the umpire, an infringement upon the resources of the district court. Farmers Union would not agree that the *loss* was covered until it had concluded that the *cause* of loss was covered. Therefore, the policy implies that Farmers Union has conceded the cause of the loss when it pursued the appraisal provision. The amount of loss was the only issue left to be determined and that is why Farmers Union pursued the appraisal provision. An ascertainment of loss is also required. It may be made "by the filing with this Company of an award [i. e., the umpire's resolution] as herein provided." The umpire performed exactly as the policy contemplates; he made a determination of the amount of damage caused by the windstorm. He did not make an independent determination of the cause of the damage. Farmers Union conceded the cause by proceeding with the appraisal provision and in its brief petitioning for the appointment of an umpire. Erickson initiated this action after Farmers Union refused his demand for payment of the award.

Because we must view the evidence in the light most favorable to Farmers Union our conclusion that the insurance policy alone would support the granting of summary judgment does not end our examination.

We also review the other evidence upon which the trial court based its decision. Included are Farmers Union's petition for an order appointing an umpire, its brief in support of the petition, and the representations that Farmers Union made to the trial court.

Paragraph 5 of the petition for an order appointing an umpire contained the following:

"During June of 1979, when the policy was in full force and effect, the Respondent's above described insured property was damaged by a wind storm."

We agree with the trial court that this alone appears to be an admission by Farmers Union that the cause of the damage was a windstorm. All that remained was a determination of the amount of damage caused by the windstorm. This was accomplished by the umpire. Therefore, proof of loss, cause of damage, and amount of damage due to the windstorm were established according to the procedure contained within the insurance policy.

Paragraph 7 of the petition for an order appointing an umpire also stated:

"Subsequent to the submission of the proof of loss, Petitioner's adjusters and Respondent entered into negotiations regarding the amount of loss sustained by Respondent. Petitioner and Respondent were unable to agree as to the amount of loss sustained under the policy. As indicated previously, the policy of insurance provides, among other things, *for an appraisal of the insured's loss and arbitration of the insured's claim.*" [Emphasis added.]

At the hearing on the motion for summary judgment Erickson stated that the parties had been proceeding under the assumption that they were acting under an arbitration clause. The trial judge agreed. The trial transcript contained the following conversation between the trial judge and Mr. Smith, attorney for Farmers Union:

"MR. SMITH: The only additional comment that I would have, apparently the Plaintiff is proceeding under the assumption that we were going under binding arbitration and he makes several references in his brief to my brief and when we talk about arbitration, and I think if the Court reviews the brief that I submitted in support of our petition for the appointment of the umpire, I think in no way contemplates any type of binding arbitration.

"THE COURT: The thing I find, Mr. Smith, is I review all the letters in the file and I think clearly everything seems to contemplate arbitration.

"MR. SMITH: Not binding arbitration.

"THE COURT: For what purpose? The Court certainly ... believed [or] maybe taken advantage of if it wasn't binding arbitration. For what purpose are we determining a loss if we aren't admitting that the loss has taken place and is covered under the contract?

"At that stage of the proceedings what do we do that for?

.     .     .     .     .

"THE COURT: ... Now, 'you petitioned me under a part of the contract. It talked about an appraisal. If it were the loss or the cause of the loss that was in dispute, I could have seen no reason why this Court would have appointed a referee if it were not going to be binding."

Later, the court stated:

"THE COURT: The Court is of the opinion that all the parties proceeded as if this were arbitration.

"The Court further believes that in my opinion this Court would never have become involved in appointing any appraiser if there was still a question of what caused the loss as a condition of appointing any appraiser in this case. This Court was of the opinion that that had been resolved. If that were a question, I don't know at that point why we are. I don't believe that that provision, that an insured is required to go through that particular provision of the contract unless it is admitted that the loss is covered under the contract.... [W]hen I review the materials in 29625, I find that all the

parties were proceeding under the assumption that this would resolve all matters."

Although Farmers Union's brief in support of its petition to appoint an umpire purports to make clear that the procedure is not binding, we believe that the document is inconsistent. A portion of that brief states:

"This remedy [the appraisal provision] is in addition to and separate from the arbitration provisions of Chapter 32–29 of the North Dakota Century Code. If either party is not satisfied at the conclusion of the proceedings, he still may proceed with a lawsuit on the matter and the other party can plead the outcome of this arbitration provision as a defense."

A prior sentence in the same paragraph as the above-quoted language states:

"The remedy provided under the policy is the *exclusive remedy* authorized by the Legislature to the parties under the contract." [Emphasis added.]

The two statements are inconsistent. If the remedy is exclusive an unsatisfied party may not proceed with a lawsuit.

The trial court ruled that the parties proceeded as if the procedure were arbitration. Farmers Union explains the differences between arbitration and appraisal in its brief on appeal; however, it must also recognize that it was at least partially the source of any misunderstanding at trial. Its brief supporting the petition to appoint an umpire stated: "[An unsatisfied party may proceed with a lawsuit and] the other party can plead the outcome of this *arbitration provision* as a defense." And "we would also point out to the Court that Respondent has requested the Court to set a date for a hearing of evidence and *arbitration* at the farm of the Respondent." [Emphasis added.] Farmers Union petitioned the court to appoint the umpire and led the court to

believe that the umpire's findings would be conclusive. The trial court would not have appointed an umpire if it were not so. When the insurance policy, Farmers Union's petition to appoint the umpire, and its brief in support of the petition are viewed in the light most favorable to Farmers Union, we cannot conclude that a material issue of fact remained. We agree with the trial court that in this situation the findings of the umpire were conclusive. The trial court did not err when it ruled that Erickson should be awarded judgment as a matter of law because there remained nothing left for him to prove.

We affirm the summary judgment granted to Erickson by the district court.

ERICKSTAD, C. J., SAND, J., and BACKES, District Judge, concur.

BACKES, District Judge, sitting in place of PAULSON, J., disqualified.

PEDERSON, Justice, concurring specially.

My views on the proper role of "arbitrators" and "courts" were expressed in my dissent in *West Fargo Public Sch. Dist. v. West Fargo Ed.*, 259 N.W.2d 612, 620 (N.D. 1977). My position is no different merely because we substitute the words "appraiser" or "umpire" for "arbitrator."

Unless the Legislature redefines the roles, apparently the question is not open for reconsideration in this court. I therefore concur because precedent obligates me to do so.