**FARGO BILTMORE MOTOR HOTEL CORPORATION, a North Dakota Corporation, and John C. Olness, Appellants,**

**v.**

**BEST WESTERN INTERNATIONAL, INC., a/k/a Best Western, Inc., a/k/a Best Western International, a/k/a Best Western, Appellee.**

**Nos. 83–1981, 83–2009.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1984.

Decided Aug. 29, 1984.

David S. Maring, Cahill, Jeffries & Maring, P.A., Moorhead, Minn., for appellants.

Kermit E. Bye, Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, N.D., Jerry C. Bonnett, Evans, Kitchel & Jenckes, P.C., Phoenix, Ariz., for appellee.

Before LAY, Chief Judge, and HEANEY and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Plaintiffs, the Fargo Biltmore Motor Hotel Corporation (Fargo Biltmore) and John C. Olness, brought this action against Best Western International, Inc. (Best Western) alleging violations of the North Dakota Franchise Investment Law, N.D.Cent.Code § 51–19–01 to § 51–19–17 (hereinafter NDFIL), and seeking rescission and restitution or damages.[1] Best Western denied

---

1. Jurisdiction in the District Court was based on diversity of citizenship. 28 U.S.C. § 1332.

plaintiffs' allegations, asserted equitable defenses, and counterclaimed for breach of contract because of plaintiffs' failure to pay for services and equipment rental. After trial, the District Court[2] dismissed plaintiffs' cause of action and entered judgment for Best Western on its counterclaim. *See* 563 F.Supp. 1022 (D.N.D.1983).

On appeal, plaintiffs argue that the District Court should have decided whether Best Western membership was a franchise under the NDFIL. Plaintiffs also argue that the equitable defenses raised by Best Western do not defeat their right to rescission. They contend that the District Court erroneously excluded evidence showing that Best Western failed to provide Olness with material facts at the time of the sale of the membership. Best Western has filed a cross-appeal contending that it is entitled to attorneys' fees for defending the action and for pursuing its counterclaim and to have costs taxed against plaintiffs. We affirm the District Court's judgment, but remand for further proceedings with regard to an award of attorneys' fees.

Best Western offers memberships to individuals. If the hotel property is owned by a corporation, then the corporation designates an individual to be a member. Membership is automatically terminated when fifty percent or more of the stock of a corporation owning the hotel property is transferred. Members use the Best Western name and registered marks and receive room reservations through Best Western's reservations center.

On December 22, 1978 Olness acquired ninety-five percent of the stock in Fargo Biltmore. The hotel owned by Fargo Biltmore was the subject of Best Western membership. Best Western informed Olness that the change in ownership resulted in automatic termination of Best Western membership and that Olness would have to apply for membership. Olness submitted a membership application and fee agreement to Best Western on December 23, 1978.

He paid the application fee in January 1979.

In March 1979, Best Western notified Olness that his application had been accepted but informed him that certain deficiencies in the hotel should be corrected within ninety days in order to bring it up to Best Western's standards. After a second inspection in June 1979, Best Western told Olness that the hotel was still below standard and gave him another ninety days. Meanwhile, Olness signed the 1980 membership certification and paid his yearly application fee. A third inspection in October 1979 and a fourth in January 1980 revealed that the hotel remained deficient in a number of areas.

In early March 1980, Olness' attorney, David Maring, contacted the North Dakota Securities Commission in order to determine if Best Western was registered to sell franchises in North Dakota. The Franchise Examiner advised Maring that Best Western was not registered. Without revealing Maring's interest, the Commission began investigating Best Western's status under the NDFIL. At the same time, however, Maring responded to Best Western's criticisms of his client's hotel by informing Best Western that steps were being taken to improve the hotel. He also suggested that all parties work together to continue the operation of the hotel as a Best Western.

After another inspection, conducted in June 1980, Best Western apprised Olness that the hotel still had serious problems and that he was entitled to appear before Best Western's board of directors to show why his membership should not be canceled. In response to this, plaintiffs stopped paying for services from Best Western, although they continued to take full advantage of such services, including several hundred room reservations. They did not tell Best Western that they intended to rescind the agreement or that they

---

**2.** The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota.

did not intend to pay for services received under the agreement.

In September 1980, after a hearing and another inspection, Best Western cancelled Olness' membership. Maring then contacted Best Western, stated that the North Dakota Securities Commissioner had determined that Best Western membership was an illegal franchise, asked that the cancellations be reconsidered, and threatened suit. When Best Western failed to reconsider the decision, plaintiffs filed suit in December 1980. They alleged that Best Western had violated the NDFIL by selling an unregistered franchise, by failing to provide Olness with a prospectus, by failing to have registered sales persons, and by not disclosing necessary facts.

## I. Equitable Defenses

The District Court ruled that plaintiffs were not entitled to relief because they failed to overcome Best Western's equitable defenses of waiver, estoppel, and failure to restore Best Western to the status quo ante.[3] Plaintiffs insist that the District Court initially should have determined if Best Western was covered by the NDFIL. They emphasize that if Best Western was so covered then it clearly violated the NDFIL by failing to register, thereby rendering the membership agreement void.

There is no merit to plaintiffs' argument. The North Dakota Supreme Court has held that failure to register does not make the contract between the alleged franchiser and franchisee automatically void. *See Country Kitchen of Mount Vernon, Inc. v. Country Kitchen of Western America, Inc.,* 293 N.W.2d 118 (N.D.1980). It also recognizes "that, at a minimum, before a franchisee may rescind a franchise agreement under [the NDFIL], [the franchisee] must overcome any equitable defenses raised by the franchiser." *Peck of Chehalis, Inc. v. C.K. of Western America, Inc.,* 304 N.W.2d 91, 100 (N.D.1981). Therefore, if Best Western's equitable defenses

barred plaintiffs' claims under the NDFIL, then the District Court was correct in concluding that it need not determine if Best Western membership constituted a franchise.

■ The record supports the District Court's conclusion that plaintiffs should be estopped from asserting their claims under the NDFIL. Plaintiffs learned in March 1980 that Best Western had not registered pursuant to the NDFIL. Nevertheless, they did not seek rescission at that time nor did they divulge their role in initiating the investigation by the North Dakota Securities Commission. Instead, they informed Best Western that they had begun and intended to continue improving the hotel. Olness' attorney urged Best Western to work with them towards this goal. For several months, Best Western, relying on these representations, provided membership benefits to the plaintiffs including the use of its name and its room reservation service. When Best Western notified Olness in June 1980 that it was considering cancellation of the membership, plaintiffs still failed to rescind the agreement and continued to take advantage of membership benefits even though they stopped paying for them. *See generally Farmers Cooperative Association of Churches Ferry v. Cole,* 239 N.W.2d 808 (N.D.1976) (elements of equitable estoppel). Thus, the District Court did not err in finding that plaintiffs' claim for rescission is barred on the equitable ground of estoppel.

■ Plaintiffs also contest the District Court's conclusion that their claims are barred by their refusal to restore Best Western to the status quo ante. This defense requires the party seeking rescission to return or offer to return to the other party everything of value that has been received. *See, e.g., Fekjar v. Iowa State Livestock Insurance Co.,* 44 N.D. 389, 177 N.W. 455 (1920). Although there are exceptions to the doctrine, *see, e.g., Wock v. Kuhn,* 221 N.W.2d 65 (N.D.1974) (may of-

---

**3.** We affirm the District Court's decision on the grounds of estoppel and failure to restore Best Western to the status quo ante, and we do not address the equitable defense of waiver.

fer to restore in pleadings; no need to offer if futile), we find no error in the District Court's application of it to this case. Plaintiffs received benefits from Best Western which they did not offer to pay for or return. We believe the District Court was correct in treating this as another equitable barrier against plaintiffs' claim for rescission.

## II. Evidentiary Matters

■ According to plaintiffs, the District Court erred in excluding several documents. These documents included correspondence between Best Western and Fargo Biltmore and inspection reports for the period prior to Olness' purchase of stock in December 1978. The significance of these documents, plaintiffs argue, is twofold. First, if Best Western had disclosed this history of criticism, Olness states that he would not have become a Best Western member. Thus, the information was relevant to the merits of the plaintiffs' claim under the NDFIL. Second, because plaintiffs did not obtain these documents until pretrial proceedings, they assert that they could not waive a claim or be estopped from asserting a claim that was dependent upon the information contained in the documents.

We hold that the District Court did not abuse its discretion in excluding these documents on the ground that they were irrelevant. *See, e.g., Brewer v. Jeep Corp.,* 724 F.2d 653 (8th Cir.1983) (review rulings on admissibility of evidence under abuse of discretion standard). The basis of plaintiffs' failure-to-disclose claim is that Best Western did not inform Olness that substantial improvements to the hotel would be required as a condition of Best Western membership. Correspondence and inspections prior to December 1978 at best would have marginal relevance to the issue of whether Best Western had fully disclosed that improvements to the hotel would be necessary.

Indeed, any error that might have existed in the exclusion of these documents was harmless. *See* Fed.R.Civ.P. 61; Fed.R. Evid. 103(a). After learning that a change in ownership of the hotel necessitated presenting a new application for Best Western membership, Olness sent in an application and fee. Best Western promptly informed him when a decision would be made. Within three months—March 1979 —Best Western had notified Olness that his application had been accepted; but Best Western also told Olness that improvements would have to be made. Thus, from the outset, plaintiffs were aware that improvements were required yet they made no attempt to rescind in March 1979 or shortly thereafter and continued their relationship with Best Western for many months.

In order for the trial court's exclusion of these documents to require reversal in this case, the documents would have to contain material facts, the nondisclosure of which would render misleading Best Western's statements to Olness about required improvements. But there is nothing especially significant about a history of criticism when Best Western promptly and fully disclosed to Olness that improvements would have to be made. Moreover, the record reveals that after Olness acquired ownership, the Fargo Biltmore continued to employ Edward Rafferty, a general manager, who had been with the hotel since 1970. Rafferty had full knowledge of previous correspondence and inspection reports. This further undercuts plaintiffs' position as to the relevance of the disputed documents.

## III. Attorneys' Fees

■ In its pleadings and by motion subsequent to trial, Best Western requested that it be reimbursed for attorneys' fees. Best Western premised its request on contract provisions that the membership agreement between Best Western and Olness would be governed by Arizona law and that Olness would be liable for attor-

neys' fees incurred by Best Western in enforcing the contract.[4]

The District Court summarily denied Best Western's request citing N.D.Cent. Code § 28–26–01.[5] We cannot determine if the District Court considered the choice of law issue and, applying North Dakota choice of law rules, concluded that North Dakota law governs the validity of the attorneys' fees provision. Thus, we do not, as we normally do, defer to the District Court's interpretation of the applicable state law. *See, e.g., Tharalson v. Pfizer Genetics, Inc.,* 728 F.2d 1108 (8th Cir.1984); *Ramsey v. Mutual of Omaha,* 652 F.2d 764 (8th Cir.1981); *In re Morris,* 602 F.2d 826 (8th Cir.1979). Even if we assume that the District Court found that the scope and validity of the attorneys' fees provision is governed by North Dakota law, we are not persuaded by the simple recitation of § 28–26–01 as a justification under state law for the denial of attorneys' fees. Section 28–26–01(1) suggests that the parties could provide by contract for attorneys' fees. *Compare Hoge v. Burleigh County Water Management District,* 311 N.W.2d

23, 31–32 (N.D.1981) (although not expressly included in indemnity agreement, award of attorney fees to landowners for pursuing indemnity rights allowed) *with Hall GMC, Inc. v. Crane Carrier Co.,* 332 N.W.2d 54, 64 (N.D.1983) (attorneys' fees must be expressly authorized by statute). We thus remand the case to the District Court for a determination of the applicable law and the validity of the contract provisions concerning liability for attorneys' fees.

## IV. Costs

█ Best Western also argues that it was entitled to recover costs. The District Court originally awarded costs to Best Western. *See* 563 F.Supp. at 1029. Subsequently, the Clerk of the Court, affirmed by the District Court, disallowed the award of costs because Best Western's Bill of Costs and Disbursements was not timely filed in accordance with local rules.[6]

█ Rule 23 of the local rules of procedure of the United States District Court for

---

**4.** Documents signed by Olness provided, in part:
 I shall be liable to Best Western for all attorneys' fees, court costs, and expenses incurred by it to enforce the covenants of this Membership Application and Agreement for the motel/hotel/resort property described herein whether or not suit is filed.
 This Agreement shall be governed by and construed according to the laws of the State of Arizona unless any obligation under this Agreement shal (sic) be invalid or unforceable (sic) under such laws, in which event the laws of the State whose law can apply to and validate the obligations under this Agreement shall apply.
 *See* Plaintiffs' Exhibit (P.Ex.) 4 (application for Best Western membership).
 I shall be liable to Best Western for all attorneys' fees, court costs and expenses incurred by it to enforce the covenants of this and any previously executed Membership Certifications or the Membership Application and Agreement for the property described herein whether or not suit is filed.
 This Certification shall be governed by the laws of the State of Arizona unless any obligations under this Certification shall be invalid or unenforceable under such laws, in which event the laws of the State whose law can apply to validate the obligations under this Certification shall apply.
 *See* P.Ex. 6 (1980 membership certification).

**5.** Section 28–26–01 provides:
 1. Except as provided in subsection 2, the amount of fees of attorneys in civil actions must be left to the agreement, express or implied, of the parties.
 2. In civil actions the court may, in its discretion, upon a finding that a claim for relief was frivolous, award reasonable actual or statutory costs, or both, including reasonable attorney's fees to the prevailing party. Such costs may be awarded regardless of the good faith of the attorney or client making the claim for relief if there is such a complete absence of actual facts or law that a reasonable person could not have thought a court would render judgment in their favor, providing the prevailing party has in responsive pleading alleged the frivolous nature of the claim.

**6.** Awards of costs rest within the sound discretion of the district court. *See Obin v. District No. 9 of the International Association of Machinists,* 651 F.2d 574, 576 n. 1 (8th Cir.1981). This Court "lacks jurisdiction to hear an appeal where the sole issue is that the district court abused its discretion as to the amount of costs awarded." *Poe v. John Deere Co.,* 695 F.2d 1103, 1109 (8th Cir.1982). In the instant case, however, Best Western challenges the District Court's interpretation of its local rule.

the District of North Dakota provides, in part, that "[w]ithin ten days after *notice of entry of a judgment* allowing costs, the prevailing party shall ... file with the Clerk, his Bill of Costs and Disbursements ...." (emphasis added). The District Court's memorandum of decision, order for judgment, and judgment were filed on March 24, 1983; the memorandum of decision and order for judgment were mailed to all parties on March 25. The order for judgment awarded costs to Best Western. Best Western did not file its Bill of Costs and Disbursements until July 26, 1983, well beyond the time limit imposed by the rule. Best Western argues that its bill was timely filed because a Notice of Entry of Judgment was not served upon the parties until July 18, 1983.

The district courts are authorized to promulgate local rules which are not inconsistent with the federal rules. 28 U.S.C. § 2071; Fed.R.Civ.P. 83. They have considerable discretion in interpreting and applying their own rules. *See, e.g., Dickinson Supply, Inc. v. Montana-Dakota Utilities Co.*, 423 F.2d 106, 110 (8th Cir.1970). Although reversal might be warranted if we were convinced that a district court had misconstrued its own rule, we do not believe this is such a case. Best Western had notice that the memorandum of decision with its attached order for judgment was filed on March 24, 1983 because a copy was mailed to it. Best Western was also aware that judgment had been entered because it filed a motion to alter or amend that judgment on April 4, 1983; such motions must be filed within ten days after entry of the judgment. *See* Fed.R.Civ.P. 59(e). We cannot say that the District Court abused its discretion in concluding that "notice of entry of judgment" refers to actual notice of the judgment and not to a formal notice served upon the parties.

For the reasons set forth above, we remand the issue of an award of attorneys' fees to the District Court and otherwise affirm the judgment of the District Court.